**Albert CHERQUI, Appellant,**

v.

**WESTHEIMER STREET FESTIVAL CORPORATION, City of Houston & John Bryson, Appellees.**

No. 14–02–00731–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Aug. 28, 2003.

Helen Tyne Mayfield, Houston, for appellant.

Andrea Chan, H. Mark Burck, Judith D. Sanchez, Kenneth Garner, Robert Fuentes, Houston, for appellees.

Panel consists of Justices ANDERSON, SEYMORE, and GUZMAN.

## OPINION

EVA M. GUZMAN, Justice.

In this personal injury action, Albert Cherqui appeals from a judgment entered in favor of the Westheimer Street Festival Corporation (the "Corporation"), the City of Houston (the "City"), and John Bryson (collectively "appellees"). Appellant asserts the trial court erred in granting a directed verdict: (1) to the Corporation, because a fact question exists regarding (a) whether off-duty police officers were acting to enforce public laws and (b) whether the Corporation could sufficiently control the officers' actions; (2) to the City, because fact questions exist regarding (a) the placement of no-parking signs and (b) proximate cause; (3) to Bryson because there was insufficient evidence to establish he acted in good faith; (4) to all appellees because the trial court did not determine whether there was effective assistance of counsel. Appellant also contends the trial court erred in excluding evidence regarding the outcome of his criminal trial and in allowing Bryson to change his discovery responses one week before trial was to begin. We affirm.

## I. BACKGROUND

Officer Bryson and several other Houston Police Department ("HPD") officers had been assigned by HPD's Special Operations Division to work an extra job at the Westheimer Street Festival on October 11, 1998. They were instructed to issue parking citations and tow illegally parked cars from the surrounding neighborhoods, including the street where appellant resides. An officer was ticketing appellant's car when appellant came out of his home and questioned the officer's actions. The officer advised appellant he was illegally parked and the car would be towed if it was not moved. As appellant proceeded to move the vehicle into his driveway, he spun his wheels. Because of this action, the officer decided to issue a citation to appellant for violating a city ordinance and requested appellant's identification. Bryson and another officer accompanied appellant into his home to retrieve appellant's driver's license. According to appellant, as the officers exited the house, appellant—admittedly irritated—told Bryson to get out of his house and attempted to close his front door; however, Bryson was in the way. Appellant testified that Bryson pushed the door, forcing appellant backwards. Appellant fell and injured his

wrist.[1] The injury required several surgeries.

Appellant filed suit against the City under the Texas Tort Claims Act alleging negligent use of tangible property, that is, handcuffs and the temporary no-parking signs, and filed claims against the Corporation under the theory of respondeat superior. Appellant filed suit against Bryson for bodily injury. The case proceeded to trial and following the close of the evidence, appellees moved for a directed verdict on various grounds. The trial court granted the directed verdict, dismissed the case, and ordered that appellant take nothing. This appeal ensued.

## II. Discussion

### A. The "Not Guilty" Verdict

For the sake of brevity, we address appellant's latter issues first. Appellant argues the trial court erred in excluding the "not guilty" verdict rendered in his criminal trial resulting from the incident between he and Bryson. However, there is nothing in the record indicating that appellant ever attempted to offer the verdict into evidence or that the trial court made a ruling excluding it.

■ Texas Rule of Evidence 103 provides that error may not be predicated upon a ruling to exclude evidence unless a party's substantial right has been affected and the substance of the evidence is either apparent or made known to the court. Tex.R. Evid. 103. Moreover, to complain

on appeal about a matter that would not otherwise appear in the record, a party must file a formal bill of exception. Tex. R.App. P. 33.2. Here, appellant does not cite to that portion of the record wherein he attempted to introduce evidence of the verdict, nor have we found any such record.[2] The record also fails to contain any bill of exception. Accordingly, appellant has failed to preserve this issue on appeal and it is therefore overruled. *See* Tex. R.App. P. 33.1 (error not preserved if record fails to show complaint was brought to the attention of the trial court by timely request, objection, or motion and trial court ruled on the request); *see also* Tex. R.App. P. 38.1(h) (brief must contain appropriate citations to the record in support of argument); *Richards v. Comm'n for Lawyer Discipline*, 35 S.W.3d 243, 251 (Tex. App.-Houston [14th Dist.] 2000, no pet.) (finding waiver where appellant never attempted to offer the evidence).

### B. Amendment of Discovery Responses

Likewise, there is nothing in the record regarding appellant's argument that the trial court erred in allowing Bryson to amend his answers to admissions and interrogatories.

■ Under Rule 193.5 of the Texas Rules of Civil Procedure, if a party learns that his response to written discovery is incomplete or incorrect, he has the duty to supplement or amend his response "reasonably promptly" after he discovers the necessity for a corrected response. Tex.R.

---

1. There was no testimony establishing at what moment, during the course of the incident, appellant's wrist injury occurred. Appellant's doctor testified that, based on the history provided by appellant, the injury occurred "while he was being arrested." Appellant testified that after falling he awoke and realized he was hurt.

2. Appellant attached a copy of the transcript of his criminal trial to his appellate brief. However, in our review, we cannot consider documents attached as appendices to briefs and must consider a case based upon the record filed. *Brown v. McGonagill*, 940 S.W.2d 178, 179 (Tex.App.-San Antonio 1996, no writ); *Mitchison v. Houston Ind. Sch. Dist.*, 803 S.W.2d 769, 771 (Tex.App.-Houston [14th Dist.] 1991, writ denied).

CIV. P. 193.5. Generally, if an amended or supplemental response is filed less than thirty days before trial, it is presumed that the response was not made "reasonably promptly." *Id.* To supplement a discovery response less than thirty days before trial, a party must show good cause or show that late supplementation will not unfairly surprise or prejudice the other party. TEX.R. CIV. P. 193.6. If the party offering the evidence does not establish good cause and the trial court admits the evidence over the opposing party's objection, the objecting party must show that the trial court's error caused rendition of an improper judgment. *Bott v. Bott,* 962 S.W.2d 626, 628 (Tex.App.-Houston [14th Dist.] 1997, no pet.); TEX.R.APP. P. 44.1(a)(1).

█ In this case, appellant apparently raised this issue for the first time in his Motion for New Trial, which he filed pro se. There is nothing in the record however evidencing appellant's claims regarding the issue. Bryson's motion is not included in the record nor is there any indication that a hearing on the motion was held. Without any evidence in the record on this issue, appellant has presented nothing for our review. *See* TEX.R.APP. P. 33.1; TEX. R.APP. P. 38.1(h); *Vacek Group, Inc. v. Clark,* 95 S.W.3d 439, 442 (Tex.App.-Houston [1st Dist.] 2002, no pet.) (finding appellant presented nothing for review when it made conclusory statements without citations to the record). Accordingly, we also overrule this issue. We now address appellant's issues regarding the directed verdicts.

## C. DIRECTED VERDICT STANDARD OF REVIEW

█ A directed verdict is proper if no evidence of probative force raises a fact issue on the material questions in the suit. *Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.,* 29 S.W.3d 74, 77 (Tex.2000).

A directed verdict for a defendant may be proper in two situations: (1) when a plaintiff fails to present evidence raising a fact issue essential to the plaintiff's right of recovery; and (2) if the plaintiff admits or the evidence conclusively establishes a defense to the plaintiff's cause of action. *Id.* When reviewing a directed verdict, we consider all the evidence in the light most favorable to the party against which the verdict was rendered, and disregard all evidence and inferences to the contrary. *Encina P'ship v. Corenergy, L.L.C.,* 50 S.W.3d 66, 68 (Tex.App.-Corpus Christi 2001, pet. denied); *Mayes v. Stewart,* 11 S.W.3d 440, 450 n. 4 (Tex.App.-Houston [14th Dist.] 2000, pet. denied). If there is no evidence of probative force on an ultimate fact element, the trial court has the duty to instruct the verdict. *Encina P'ship,* 50 S.W.3d at 68; *see Columbia/HCA of Houston, Inc. v. Tea Cake French Bakery & Tea Room,* 8 S.W.3d 18, 22 (Tex.App.-Houston [14th Dist.] 1999, pet. denied).

### 1. EFFECTIVE ASSISTANCE OF COUNSEL

█ Appellant argues the trial court erred in granting the directed verdicts "as there was ineffective assistance of counsel." However, it is well established that the doctrine of ineffective assistance of counsel does not extend to civil cases. *Stokes v. Puckett,* 972 S.W.2d 921, 927 (Tex.App.-Beaumont 1998, pet. denied); *Walton v. City of Midland,* 24 S.W.3d 853, 862 (Tex.App.-El Paso 2000, no pet.). The Sixth Amendment of the United States Constitution and Article I, Section 10 of the Texas Constitution provide that "in all *criminal prosecutions,* the accused shall enjoy the right ... to have the assistance of counsel for his defense." U.S. CONST. AMEND. VI; TEX. CONST. art. I, § 10 (emphasis added). Thus, by their plain language neither the Sixth Amendment nor

Article I, Section 10 apply to civil cases. *Approximately $42,850.00 v. State,* 44 S.W.3d 700, 702 (Tex.App.-Houston [14th Dist.] 2001, no pet.); *see also Harris v. Civil Service Comm'n for Mun. Employees of the City of Houston,* 803 S.W.2d 729, 731 (Tex.App.-Houston [14th Dist.] 1990, no writ). Therefore, we overrule this issue.

### 2. DIRECTED VERDICT IN FAVOR OF THE CORPORATION

Appellant filed suit against the Corporation based upon a theory of respondeat superior. The Corporation moved for a directed verdict on the grounds that it could not be vicariously liable for the officers' actions because: (1) Bryson and the other officers were acting as on-duty officers during the incident with appellant and (2) the officers were independent contractors.

#### a. "On–Duty" Police Officers

 Under the doctrine of respondeat superior, an employer may be vicariously liable for the tortious acts of an employee. *St. Joseph Hosp. v. Wolff,* 94 S.W.3d 513, 541–42 (Tex.2002) (quoting *Baptist Mem'l Hosp. Sys. v. Sampson,* 969 S.W.2d 945, 947 (Tex.1998)); *Mansfield v. C.F. Bent Tree Apartment Ltd. P'ship,* 37 S.W.3d 145, 149 (Tex.App.-Austin 2001, no pet.). When determining the status of an off-duty officer we ask "in what capacity was the officer acting at the time he committed the acts for which the complaint is made?" *Blackwell v. Harris County,* 909 S.W.2d 135, 139 (Tex.App.-Houston [14th Dist.] 1995, writ denied). If a peace officer is performing a public duty, such as enforcement of general laws, he is acting in the course and scope of his employment as a police officer and the private employer is not vicariously liable for the officer's actions, even if the employer may have directed those activities. *Mansfield,* 37 S.W.3d at 150; *Larkin v. Johnson,* 44 S.W.3d 188, 189–90 (Tex.App.-Houston [14th Dist.] 2001, pet. denied); *Bridges v. Robinson,* 20 S.W.3d 104, 111 (Tex.App.-Houston [14th Dist.] 2000, no pet.), *disapproved of on other grounds, Telthorster v. Tennell,* 92 S.W.3d 457, 464 (Tex.2002); *see also Blackwell,* 909 S.W.2d at 139. If an off-duty officer observes a crime, as a matter of law he becomes an on-duty officer. *Mansfield,* 37 S.W.3d at 150; *City of Dallas v. Half Price Books, Records, Magazines, Inc.,* 883 S.W.2d 374, 377 (Tex. App.-Dallas 1994, no writ).

The evidence adduced at trial, examined in the light most favorable to appellant, established that on the day in question the officers had been assigned to enforce temporary no-parking signs by their supervising officer and were ticketing cars in the areas surrounding the festival. The officers wore their police uniforms and used equipment issued to them by the City. Significantly, appellant testified that he recognized these individuals as police officers.

Appellant's vehicle was parked below a temporary no-parking sign. Appellant was told to move the vehicle and, after receiving a parking citation, appellant spun his tires, moving the car in a reckless manner.[3] In doing so, appellant violated a city ordinance, and the officers witnessed the violation. Bryson and the other officers testified that it is their duty, whether

---

**3.** Appellant testified that his tires were spinning because the gas pedal had a "strong spring" and he was barefoot and unused to the gas pedal under those circumstances. Specifically, appellant stated, "[a]nd when the metal move I couldn't control anymore the gas, my wheels spin, you know. Scare me and I was surprised of that because I was not expecting that."

on duty or off, to act whenever they see a crime or offense being committed; likewise, it is their duty to uphold any city, state, or federal laws. Bryson saw appellant's car illegally parked and saw appellant violate a city ordinance by spinning his vehicle's tires. From the point of making those observations, Bryson and the other officers were acting as on-duty police officers as a matter of law. *See City of Dallas,* 883 S.W.2d at 377. Also, when Bryson accompanied appellant into his home, Bryson did so as a police officer.

Further, the officers stated they did not meet with festival officials, were not contacted by them, and were unable to take orders from festival officials, as they were allowed only to take orders from their supervising officer.[4] John Florez, the presiding officer of the festival, testified that the Corporation neither contacted the officers nor gave them orders:

Q. Mr. Florez, how did you go about hiring the off-duty police officers? Explain that process.

A. There is a—the City has a department within HPD called special operations. I really do nothing except pay the officers. I mean everything is handled by them. They meet, they decide, they pick, they instruct and we simply pay the officers.

He stated further that the Corporation did not provide equipment to the officers and did not have any control over their duties. ▆▆ Considering all of the evidence, we find that the officers involved were acting as on-duty police officers, enforcing the general laws, at all times during their

encounter with appellant. Although it is true that the evidence at trial established the officers were paid by the Corporation, imposing liability on an employer requires more. *See Wolff,* 94 S.W.3d at 541–42 (noting that a number of factors, particularly that of control, affect whether and when vicarious liability is appropriate). There was no probative evidence raising a fact issue regarding the Corporation's vicarious liability for the acts of the officers. We find the trial court correctly directed a verdict in the Corporation's favor on this issue.

### b. Enforcing Public Laws

Appellant argues the directed verdict was in error because a fact issue existed concerning whether Bryson was enforcing a public law. In making this argument, appellant apparently[5] reasons that because the no-parking signs were unauthorized by the city engineer, the officers were not enforcing a "public law." However, under the facts of this case, we find this contention to be without merit.

▆▆ Initially, we note appellant fails to offer any authority for the proposition that an "unauthorized" sign is unenforceable, and an officer's subsequent enforcement actions are also "unauthorized." *See* Tex. R.App. P. 38.1(h). Nevertheless, it is undisputed that the City did in fact post the temporary no-parking signs at issue. Appellant stipulated to this at trial and indeed, developed testimony that city workers placed the signs on appellant's street in the "course and scope" of their employment with the City. We find this sufficient-

4. Part of the permit process, required to conduct the festival, involves hiring off-duty police officers. Once the permit is filed, a festival representative is contacted by someone in the special operations department and arrangements are made regarding the number of officers required to work the festival.

5. Although we cannot discern from appellant's brief the specific argument advanced by appellant regarding this issue, we nevertheless attempt to address what we believe his argument to be.

ly establishes that the officers were acting to enforce a public law for the purposes of our analysis. It would be unreasonable to conclude that because the signs may have been "unauthorized" (as opposed to illegal, which we do not address here), the officers' actions pursuant to enforcing those signs were consequently invalid. Bryson and the other officers acted in good faith reliance on the validity of the posted no-parking signs and enforced a "public law."

Moreover, even assuming for the sake of argument that the no-parking signs were not "public laws" because they were not properly authorized, that fact is not material here because Bryson and the other officers also witnessed appellant violating another city ordinance when he spun his vehicle's tires. Appellant does not contend that this latter ordinance was not a public law.[6]

Finally, appellant argues that *Bridges v. Robinson*, 20 S.W.3d 104 (Tex.App.-Houston [14th Dist.] 2000, no pet.), is factually similar to the case at bar and requires that the issue of whether the officers were enforcing rules promulgated by the festival or by the City should have been submitted to the jury. We disagree.

*Bridges* is inapposite to the issue addressed here, as the facts most salient regarding a directed verdict in favor of the Corporation differ significantly from those in *Bridges*. In that case, a Dillard's customer became embroiled in a struggle with two on-duty salaried security officers who were also Harris County sheriff's deputies. 20 S.W.3d at 108. Tragically, the customer died as a result of injuries sustained during the confrontation with the peace officers. *Id.* at 110. Here, the officers involved in the confrontation were not "salaried security officers" working to protect the property of the private employer or the employer's rules, as they were in *Bridges*. *Id.* at 108. Indeed, the *Bridges* court noted that there was "ample evidence that the [officers] were working private, off duty, security jobs." *Id.* at 111. Instead, here there is ample evidence that the officers, although paid by the Corporation, were at all times acting to enforce public laws. Further, the *Bridges* court noted that if a police officer is "engaged in the protection of the employer's property, ejecting trespassers or enforcing rules and regulations promulgated by the employer," it then becomes a jury question as to whether he was acting as a public officer or as an agent of the private employer. *Id.* (quoting *Blackwell*, 909 S.W.2d at 139). Here, the officers were enforcing no-parking signs placed by the City, in their capacity as police officers. The officers were citing appellant for a violation of a city ordinance, they were not enforcing rules promulgated by the Corporation.[7] The

---

**6.** Appellant did not actually receive a citation for violating the ordinance because his confrontation with the officers immediately followed; appellant was instead arrested for assault. Although appellant mentions that Bryson was not the ticketing officer, he fails to state why this would be material given the facts of this case. Testimony established that Bryson and the other officers worked together, as a group, ticketing cars. They rode together and all were under the supervision of Sergeant Mark Bailey. Bryson testified that he accompanied appellant into his home to retrieve the license, along with the ticketing officer, for safety purposes and, accord-

ing to appellant, that is when the injury occurred. There is nothing in the record to indicate that appellant's arrest was not part of a continuous sequence of events, beginning with the parking citation and ending with his arrest. It is of no consequence that Bryson was not the ticketing officer.

**7.** Appellant implies that because the no-parking signs were placed on his street due to the festival, the no-parking signs were somehow rules promulgated by the Corporation. We reject this implication. As discussed, there was direct testimony the no-parking signs were placed there by City employees in the

confrontation in *Bridges* occurred on the store's premises while the officers were acting as paid Dillard's employees, enforcing the private employer's rules and protecting its property. Contrarily, here the confrontation began on a public street when appellant received a parking citation. Although appellant was injured in his home that does not change the character of the officers' functions, they were still enforcing public laws. Comparing *Bridges* to the instant case, the only factual similarity is that a private citizen was involved in a physical struggle with peace officers.

### c. The Officers as Independent Contractors

In the trial court, the Corporation also argued it could not be held liable for the actions of the officers because they were independent contractors. Appellant argues that a fact issue existed concerning the Corporation's ability to control the off-duty officers. Specifically, appellant argues that because Florez testified the Corporation could control the officers through the off-duty police supervisors, the jury could have inferred that by giving orders through the supervisors, the Corporation could have prevented the officers from injuring appellant.[8] Again, we find appellant's contentions without merit.

 An independent contractor is "one 'who, in the pursuit of an independent business, undertakes to do a specific piece

of work for other persons, using his own means and methods, without submitting himself to their control in respect to all its details.'" *Duran v. Furr's Supermarkets, Inc.*, 921 S.W.2d 778, 786 (Tex.App.-El Paso 1996, writ denied) (quoting *Pitchfork Land & Cattle Co. v. King*, 162 Tex. 331, 346 S.W.2d 598, 602–03 (1961)). In determining whether one is acting as an employee or as an independent contractor, a court is required to examine several factors, including: (1) the independent nature of the contractor's business; (2) his obligation to supply necessary tools, supplies, and materials; (3) his right to control the progress of the work except as to final results; (4) the time for which he is employed; and (5) the method by which he is paid, whether by the time or by the job. *Duran v. Furr's Supermarkets, Inc.*, 921 S.W.2d 778, 786 (Tex.App.-El Paso 1996, writ denied). The most important factor in the analysis is the right of control. *Id.* A "possibility" of control is not evidence of a right to control. *Coastal Marine Serv. of Texas, Inc. v. Lawrence*, 988 S.W.2d 223, 226 (Tex.1999).

 In this case, there was ample evidence the Corporation did not have the right to control the officers and that the officers acted as independent contractors. The officers received their assignment from a supervising officer rather than the Corporation. Indeed, the Corporation did

---

course and scope of their employment. There was also testimony that the Corporation did not in fact want the no-parking signs in the area because it prevented patrons from parking close to the festival. Moreover, as discussed later in this opinion, we reject any assertion that the festival may be liable based on some attenuated causation.

**8.** In support of this assertion, appellant cites to *Coastal Marine Serv. of Tex., Inc. v. Lawrence,* 988 S.W.2d 223 (Tex.1999). In *Coastal,* an independent contractor's employee died

as a result of an accident involving a crane owned by Coastal but operated by the independent contractor. *Id.* at 224. The issue in that case was "whether an independent contractor's willingness to follow a premises owner's instructions, though no such instructions were given, [was] legally sufficient evidence of the premises owner's 'right to control' in a premises liability case." *Id.* at 224. The court found it was not, concluding "a possibility of control" was not evidence of a right to control. *Id.* at 224–26.

not deal directly with the officers at all. Florez testified: "I don't instruct them what to do, what not to do, what to wear, when to be there. That is determined to the letter by special operations."[9] Florez stated further that he did not supervise the officers, was not involved in their hiring, did not speak to them regarding their duties and did not supply any uniforms or equipment. He also testified that he was unaware of the incident with appellant until receiving a letter from appellant's trial counsel. The officers testified that, had anyone from the festival instructed them to not ticket a car or otherwise conduct their police activities, they would be unable to take orders from the Corporation. Further, the officers ticketed the cars under their authority as Houston police officers, using city equipment and wearing police uniforms. *See Hoechst Celanese Corp. v. Compton,* 899 S.W.2d 215, 221 (Tex.App.-Houston [14th Dist.] 1994, writ denied) (finding off-duty officers hired by a private corporation to be independent contractors because, in part, they furnished their own equipment). *Police work of this type is, by its nature, an independent business.* The officers, not the festival, were conducting police work in controlling the parking situation. *See id.* (finding off-duty officers hired by private corporation to conduct traffic were independent contrac-

tors, in part, due to the nature of the work).

As further evidence the officers were independent contractors and outside of the Corporation's control, the officers were paid on an hourly basis, with cash, and were responsible for paying their own taxes on the money earned. *See Bennack Flying Serv., Inc. v. Balboa,* 997 S.W.2d 748, 752–53 (Tex.App.-Corpus Christi 1999, pet. dism'd w.o.j.) (noting that payment of taxes or social security was some evidence of employment relationship). Based upon this evidence, the officers were acting as independent contractors, enforcing the law and as such, the Corporation is not liable for their acts.[10]

In sum, there was no evidence raising a fact issue on either of the grounds asserted and a directed verdict in favor of the Corporation was proper. We overrule appellant's issues regarding the Corporation.

### 3. DIRECTED VERDICT IN FAVOR OF THE CITY

Appellant filed suit against the City under the Texas Torts Claim Act (hereinafter the "Act") for the negligent use of handcuffs and its negligent placement of the no-parking signs. At trial, the City moved for a directed verdict on the ground that there was no evidence that placement of the signs was the proximate cause of appellant's injury and there was no evidence

---

**9.** Appellant states in his brief that Florez testified the Corporation could "control" the officers through off-duty police supervisors, however he fails to provide record citations for that testimony. Our independent search of the record does not reveal any testimony sufficient to establish the requisite level of control necessary for the imposition of liability on the Corporation. *See St. Joseph Hosp. v. Wolff,* 94 S.W.3d 513, 541–42 (Tex.2003) (finding that the most important issue in imposing liability within an employment context is control). Although some of the testimony may, at best, exhibit a *possibility* of control, as noted, this

is not evidence of a right of control. *Coastal Marine,* 988 S.W.2d at 226.

**10.** Although in listing his issues, appellant states that a fact issue existed "about whether [the Corporation] could be held liable for the officers' action even if they were independent contractors" because of the Corporation's ability to control the officers, appellant did not argue that particular point of law in his brief. Regardless, having found that the Corporation did not have *any* control over the officers, it is unnecessary to address the issue of any liability for the officers' actions as independent contractors.

of negligence in Bryson's use of the handcuffs. Appellant argues that the trial court erred in granting a directed verdict in favor of the City "on the issues relating to the placement of signs" because fact questions existed as to proximate cause.[11]

 In Texas, a governmental unit such as the City is immune from tort liability absent a legislative waiver. *See Dallas County Mental Health & Mental Retardation v. Bossley,* 968 S.W.2d 339, 341 (Tex.1998); *see also Tex. Workers' Comp. Comm'n v. City of Eagle Pass,* 14 S.W.3d 801, 804 (Tex.App.-Austin 2000, pet. denied). Relative to this case, under the Act a governmental unit is liable for personal injury caused by a condition or use of tangible personal property if the governmental unit would, were it a private person, be liable to the claimant according to law. TEX. CIV. PRAC. & REM.CODE § 101.021(2). Under this provision of the Act, for immunity to be waived, the injury must be proximately caused by the condition or use of tangible property.[12] *Bossley,* 968 S.W.2d at 343. The requirement of proximate causation is more than mere involvement of the property. *Id.* There must be a "direct and immediate relationship between the injury and the use of the property." *Univ. of Tex. Med. Branch Hosp. v. Hardy,* 2 S.W.3d 607, 609 (Tex. App.-Houston [14th Dist.] 1999, pet. denied).

 Appellant argues that the conflict between himself and the officers was a "foreseeable result" of the negligent placement of the temporary no-parking signs. As support for his assertion, appellant cites to Bryson's testimony stating that he had dealt with people irritated by receipt of a parking ticket. Following appellant's reasoning of causation then, by placing the no-parking signs around the festival area the City caused the police to ticket vehicles, which caused appellant to become upset, thus causing him to confront the police officers, resulting in his injury.[13] We find this sequence of events is too attenuated to conclude that placement of the signs caused appellant's injury. There is no direct and immediate relationship between appellant's injury and placement of the signs. *See Bossley,* 968 S.W.2d at 343. Although placement of the signs caused appellant to receive a parking ticket, it did not cause his wrist injury. *Id.* ("Property does not cause injury if it does no more than furnish the condition that makes the injury possible."). The trial court did not err in granting a directed verdict in favor of the City and we overrule appellant's issue.

### 4. DIRECTED VERDICT IN FAVOR OF BRYSON

Finally, we address appellant's issue regarding the directed verdict in favor of

---

11. Appellant does not argue that a fact issue was raised regarding Bryson's use of the handcuffs.

12. For "use" of tangible personal property to occur, the property must be put or brought into service or action, or employed for or applied to a given purpose. *Kerrville State Hosp. v. Clark,* 923 S.W.2d 582, 584 (Tex. 1996); *Univ. of Tex. Med. Branch Hosp. v. Hardy,* 2 S.W.3d 607, 609 (Tex.App.-Houston [14th Dist.] 1999, pet. denied). Assuming without deciding that appellant has sufficiently established that the City's "use" of the no-parking signs falls within the parameters of a

waiver of liability under the Act and that the City did in fact negligently place the signs on appellant's street, we address the causation issue.

13. In support of his assertions, appellant cites to *Bagg v. Univ. of Tex. Med. Branch,* 726 S.W.2d 582 (Tex.App.-Houston [14th Dist.] 1987, writ ref'd n.r.e.), which stands for the proposition that a person can still be sued in his individual capacity for a wrongful unofficial act. We fail to see the application of this case to appellant's arguments regarding causation.

Officer Bryson. At trial, Bryson argued for a directed verdict on the grounds of qualified immunity and that there was no evidence he ever assaulted appellant. Appellant argues the trial court erred in granting the directed verdict because Bryson failed to conclusively establish he was entitled to official immunity, claiming Bryson did not present sufficient evidence that he was a governmental employee and acted in good faith.[14]

Official immunity is an affirmative defense that protects governmental employees from personal liability. *Telthorster v. Tennell,* 92 S.W.3d 457, 460 (Tex.2002) "A governmental employee is entitled to official immunity for (1) the performance of discretionary duties (2) that are within the scope of the employee's authority, (3) provided that the employee acts in good faith." *Id.* at 461.[15]

Regarding appellant's assertion that Bryson failed to establish he was a governmental employee, given our previous conclusion that Bryson was acting as an on-duty officer during the incident in question,[16] we find appellant's assertion on this point without merit and address only his argument concerning evidence of good faith.[17]

Appellant argues there is insufficient evidence of good faith because Bryson presented only conclusory evidence that the officers believed he was acting in

good faith and Bryson did not address the factors set forth in *City of Lancaster v. Chambers,* 883 S.W.2d 650, 656 (Tex.1994). In *Chambers,* a high-speed pursuit case, the court set forth a need/risk analysis to be used in determining the element of good faith. *See Chambers,* 883 S.W.2d at 656–57. However, in cases involving personal injury during an arrest, a particularized need/risk assessment is not necessary. *Telthorster v. Tennell,* 92 S.W.3d 457, 464 (Tex.2002). Instead, in these latter cases, an officer must show that a reasonably prudent officer, under the same or similar circumstances, could have believed that his conduct was justified based on the information he possessed when the conduct occurred. *Id.* at 465. The good faith inquiry is not "what a reasonable person *would have done,*" but "what a reasonable officer *could have believed.*" *Id.* If the officer meets this burden, the claimant must offer evidence that no reasonable officer in that position could have believed that the facts were such that they justified his conduct.[18] *Id.*

Considering that official immunity is an affirmative defense, Bryson had the burden to prove each element, including that he acted in good faith. *See Rivas v. City of Houston,* 17 S.W.3d 23, 28 (Tex. App.-Houston [14th Dist.] 2000, no pet.). However, Bryson was not required to prove that it would have been unreasonable not to engage in the conduct at issue,

---

**14.** Appellant does not present any argument in his brief regarding an alleged assault.

**15.** We note also that if a governmental employee is not liable based upon official immunity, the governmental employer is similarly not liable. *See DeWitt v. Harris County,* 904 S.W.2d 650, 654 (Tex.1995).

**16.** In addition, all parties stipulated at trial that Bryson was a peace officer on the day in question, licensed by and through the State and commissioned by the City of Houston.

**17.** Appellant does not argue that Bryson was not performing a discretionary act; however, an arrest is a discretionary act. *See Half Price Books,* 883 S.W.2d at 376.

**18.** Appellant again cites to *Bagg,* asserting that this case is similar to "a sheriff obtaining an unauthorized fee." Based upon the circumstances of this case, we fail to see the analogy. The applicable law is as set forth above.

or that all reasonably prudent officers would have engaged in the same conduct. *See Telthorster,* 92 S.W.3d at 465. Bryson was required to prove only that a reasonably prudent officer, under similar circumstances, might have reached the same decision. *Id.* If officers of reasonable competence could disagree on the issue, the officer will be said to have acted in good faith as a matter of law. *Id.*

At trial, Bryson testified that during the incident he was performing "normal police officer duties" and was acting in accordance with his police training. He further testified that appellant was belligerent and "very upset." Another officer described appellant as "very emotional" and loud. Sergeant Bailey, the supervising officer on the scene, described appellant as "highly ticked off" and acting "extremely" unreasonably. He and another officer also stated appellant was yelling and hollering. Also, each officer testified that when appellant moved his car into his driveway, he did so in a reckless manner.[19]

 Further, Bryson testified that when appellant entered his home to retrieve his license, Bryson accompanied him—along with another officer—for safety purposes, due in part to appellant's belligerence. Sergeant Bailey acknowledged that this was an appropriate action and stated it was "standard procedure" for an officer to "stand near" a suspect while he was being detained. Importantly, both Bailey and another officer on the scene that day stated Bryson's actions during the incident were lawful and that another reasonably prudent officer might have acted in the same manner had they been in Bryson's position. Based on this evidence, Bryson established that he acted in good

faith. *See Rivas,* 17 S.W.3d at 27–28. Contrarily, appellant did not present evidence establishing that no reasonable officer in that position could have believed the facts were such that they justified his conduct. Accordingly, we overrule appellant's issue concerning Officer Bryson.

### III. CONCLUSION

In sum, we find the trial court did not err in granting a directed verdict in favor of appellees. Appellant's issues are overruled and the judgment of the trial court is affirmed.

---

**19.** Appellant similarly described his state of mind as "pissed off" and also stated he had lost control of his gas pedal when pulling his car into the driveway. Although appellant's version of the facts differs somewhat from Bryson's, the differences are not material to the issue here.