**Opinion filed May 7, 2009**



In The

# Eleventh Court of Appeals

_____

## No. 11-08-00062-CV

_____

## GETHSEMANE BROWN, Appellant

## V.

## DILLARD'S, INC., Appellee

**On Appeal from the 70th District Court**

**Ector County, Texas**

**Trial Court Cause No. A-121,110**

### O P I N I O N

Gethsemane "Emmitt" Brown sued Dillard's, Inc. following his detention and the search of his vehicle in a mall parking lot. The trial court granted Dillard's motion for summary judgment. We affirm.

### I. *Background Facts*[1]

Emmitt and his sons were going to a track meet. They stopped at Music City Mall to exchange cars with his wife who worked at Dillard's. Emmitt's oldest son, Jamel, stayed with the

---

[1]The record reflects that there are racial overtones present in this case. Emmitt is African-American and his wife is Hispanic. One of the security officers is African-American, and several of the Dillard's managers have Hispanic surnames. Emmitt's car was stopped and searched because several Dillard's managers observed Emmitt and his son, who was wearing basketball shorts, a muscle shirt, and a do-rag, commit what they perceived to be suspicious activity. Emmitt's causes of action include an allegation that Dillard's deprived him of his civil rights by profiling minority customers, shoppers, and patrons.

car while Emmitt and his other sons went inside Dillard's. Emmitt's trunk was open, and Jamel sat on the bumper. Emmitt got his wife's keys and drove her car to the spot where he had parked his. He opened her trunk, and Jamel unloaded a duffle bag and a blanket from the car and put them into Emmitt's wife's trunk. Jamel and Emmitt also moved two Dillard's bags from inside her car to her trunk.

Several Dillard's managers were returning from lunch at this same time. They saw a young man standing next to a car with the trunk open, saw another car quickly pull up, and then saw several bags – including Dillard's bags – being pulled out of the first vehicle and placed into the second. Dillard's had suffered several recent "grab-and-runs," and the managers were concerned that a theft was in progress. They called Dillard's and spoke with Kyle Brown, an off-duty Odessa Police Department Officer who was working part-time for Dillard's as a security officer. Kyle contacted Henry Jackson, who was also an off-duty Odessa police officer and who was working part-time as a mall security officer, and requested assistance. Kyle then came outside, got into the vehicle with the managers, and followed the suspicious vehicle.

Emmitt drove to the mall exit. Just as he was preparing to pull out onto 42nd Street, a pickup stopped in front of him, and he was forced to make a sudden stop to avoid an accident. The vehicle with the Dillard's managers and Kyle stopped behind him. Jackson got out of the pickup and started banging on Emmitt's window. Jackson told Emmitt to open his trunk and said that he had been accused of stealing pants. Jackson was wearing a uniform and a badge, and he was armed. After regaining his composure, Emmitt recognized Jackson from sporting events and school activities, and he opened the trunk. Kyle was standing at the rear of Emmitt's car. He also was in uniform and was wearing a badge. Emmitt also recognized Kyle because he had seen him working inside Dillard's as a security guard. Kyle directed two of the Dillard's managers to search the trunk. They did so and, in the process, ripped open two Dillard's bags. Emmitt objected to their search, but Kyle prevented him from interfering. When the managers found a receipt, they dropped the bags, got back into their vehicle, and left.

## II. *Issues*

Dillard's filed a combination traditional and no-evidence motion for summary judgment. The trial court granted that motion without specifying the motion or the grounds upon which it relied. Emmitt challenges the trial court's judgment with a single issue, contending that the court erred

when it granted Dillard's motion for summary judgment. Because of our resolution of this issue, it is unnecessary to address Dillard's no-evidence motion.

III. *Analysis*

A. *Standard of Review*.

When, as here, a party files a traditional motion for summary judgment, the standard of review is well settled. Questions of law are reviewed de novo. *St. Paul Ins. Co. v. Tex. Dep't of Transp.*, 999 S.W.2d 881, 884 (Tex. App.—Austin 1999, pet. denied). To determine if a fact question exists, we must consider whether reasonable and fair-minded jurors could differ in their conclusions in light of all the evidence presented. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007). We must consider all the evidence in the light most favorable to the nonmovant, indulging all reasonable inferences in favor of the nonmovant, and determine whether the movant proved that there were no genuine issues of material fact and that it was entitled to judgment as a matter of law. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985).

B. *Is Dillard's Responsible for Kyle's Conduct*?

To determine Dillard's liability, the initial question is: In what capacity was Kyle acting when Emmitt was stopped and his vehicle searched? *See Cherqui v. Westheimer St. Festival Corp.*, 116 S.W.3d 337, 344 (Tex. App.—Houston [14th Dist.] 2003, no pet.). It is undisputed that Kyle:

* was an off-duty Odessa police officer,

* was wearing his OPD uniform and badge,

* was working part-time for Dillard's as a security officer and was on the clock,[2] and

* was responding solely on the basis of information given him by the Dillard's managers.

It is also undisputed that Emmitt was stopped and searched in the mall parking lot near the exit. Dillard's argues that these facts establish, as a matter of law, that Kyle was acting as a peace officer rather than a private security guard. Emmitt counters that summary judgment is improper because a fact question exists on Kyle's status.

Every peace officer has a duty to preserve the peace. *Mansfield v. C.F. Bent Tree Apartment Ltd. P'ship*, 37 S.W.3d 145, 151 (Tex. App.—Austin 2001, no pet.). If an off-duty officer observes

---

[2]Kyle testified that he identified himself as a police officer working for Dillard's. Emmitt did not recall him identifying himself.

and responds to a crime, he becomes an on-duty officer. *City of Dallas v. Half Price Books, Records, Magazines, Inc.*, 883 S.W.2d 374, 377 (Tex. App.—Dallas 1994, no writ). Kyle did not observe Emmitt commit any suspicious activity but relied entirely upon the Dillard's managers. This, however, does not automatically make him a private security officer. *See Bridges v. Robinson*, 20 S.W.3d 104, 111 (Tex. App.—Houston [14th Dist.] 2000, no pet.), *disapproved of on other grounds*, *Telthorster v. Tennell*, 92 S.W.3d 457, 464 (Tex. 2002) (an off-duty officer enforcing general laws can be a peace officer even if his private employer directed him to perform the duty); *see also Morgan v. City of Alvin*, 175 S.W.3d 408, 417 (Tex. App.—Houston [1st Dist.] 2004, no pet.) ("An officer's public duty may also be triggered by reasonable suspicion to detain a person for investigation even if the officer lacks knowledge of facts justifying an arrest based on probable cause.").

In *Blackwell v. Harris County*, 909 S.W.2d 135, 139 (Tex. App.—Houston [14th Dist.] 1995, pet. denied), the court described the test for distinguishing between an individual acting in a public versus a private capacity:

> If he is engaged in the performance of a public duty such as the enforcement of general laws, his [private or temporary] employer incurs no vicarious responsibility for his acts, even though the employer directed him to perform the duty. On the other hand, if he was engaged in the protection of the employer's property, ejecting trespassers or enforcing rules and regulations promulgated by the employer, it becomes a jury question as to whether he was acting as a public officer or as an agent, servant of employer.

Most decisions involving off-duty police officers and suspected criminal activity have applied this test and found that the officers were acting in their public capacity, but in *Bridges*, the court found that a fact question existed concerning the status of two off-duty officers who were working for Dillard's as security officers. The officers responded to a disturbance between a customer and a store employee. They escorted the customer to a back office and bound him with tape. 20 S.W.3d at 108. Some witnesses observed the officers strike the customer. *Id.* Houston police officers arrived, and the customer was wheeled out of the office, hogtied, on a flatbed dolly. He subsequently died of injuries sustained during the confrontation. *Id.* at 110. The court found that sufficient evidence existed to create a fact question on the off-duty officers' status but did not specifically delineate the determinative facts. *Id.* at 111. In subsequent cases, the court highlighted that the

4

officers were protecting Dillard's property or enforcing Dillard's rules rather than public laws, that the incident occurred on the store's premises, and that the officers physically abused the customer. *See Cherqui*, 116 S.W.3d at 346; *Larkin v. Johnson*, 44 S.W.3d 188, 190 (Tex. App.—Houston [14th Dist.] 2001, pet. denied).

Kyle acted on information that Emmitt was stealing property from a car in the mall parking lot. This is a general law not a Dillard's rule.[3] The property included Dillard's bags, but Kyle was not specifically protecting Dillard's property.[4] *Cf. Mansfield*, 37 S.W.3d at 149-50 (when there is no immediate crime and the off-duty officer is protecting a private employer's property or otherwise enforcing a private employer's rules or regulations, the trier of fact determines whether the officer was acting as a public officer). The activity the Dillard's managers observed, and the subsequent stop and search, occurred in a public area rather than in the store. Finally, the act of stopping a vehicle driving in a public area and forcing the owner to allow a search of his trunk based upon allegations of theft is the act of a peace officer enforcing a general law.[5] *See Ogg v. Dillard's, Inc.*, 239 S.W.3d 409, 419 (Tex. App.—Dallas 2007, pet. denied) (off-duty officer who detained a customer at Dillard's direction to investigate possible credit card abuse was still acting as a public official because he was enforcing a general law). The trial court did not err by finding that Dillard's was not liable for Kyle's conduct.

### C. Is Dillard's Liable for its Managers' Conduct?

It is undisputed that the managers were returning from lunch in a privately owned vehicle; that, when they observed suspected criminal activity in the mall parking lot, they called Dillard's and spoke with Kyle; and that they participated in the stop and search of Emmitt's vehicle. Emmitt argues that Dillard's is liable for their actions under the doctrines of respondeat superior, agency, or nondelegable duty.

---

[3]*See* TEX. PENAL CODE ANN. § 30.04 (Vernon Supp. 2008) (burglary of a vehicle).

[4]For an example of an off-duty officer protecting his private employer's property, see *Larkin*, 44 S.W.3d at 189 (off-duty officer was protecting employer's property when marking receipts as customers left store).

[5]We are cognizant of TEX. CIV. PRAC. & REM. CODE ANN. § 124.001 (Vernon 2005), which allows a person who reasonably believes that another has stolen or is attempting to steal property to detain that person in a reasonable manner and for a reasonable time to investigate ownership of the property. However, this was not a stop in the store or immediately outside it, nor was it a stop by civilian employees.

The general rule is that employers are only liable for the off-duty torts of their employees that are committed on the employers' premises or with the employers' chattels. *Loram Maint. of Way, Inc. v. Ianni*, 210 S.W.3d 593, 596 (Tex. 2006). Emmitt does not contend that either exception is present in this case but concentrates primarily on the propriety of the individuals' actions, highlighting, for example, that he did nothing wrong and that no one witnessed a crime. He also argues that the managers instructed Kyle on what to do. We have previously found that Kyle was acting as a public officer. Because he was acting as a public officer, the mere fact that the managers reported a suspected crime and were present during the stop and search does not make Dillard's liable.

Nor is Dillard's otherwise liable. Emmitt is critical of Dillard's security training programs but has cited no law creating a general duty to train individuals on how to behave or act while off duty, let alone when faced with suspected criminal activity, or produced any evidence that the managers' off-duty actions were dictated by company policy. In fact, the evidence was that company policy prohibited employees from following a suspected shoplifter past the sidewalk. The managers believed that Dillard's merchandise had been stolen, and as managers they had an interest in minimizing theft from their store. The mere fact that they saw what they thought was a criminal act in the parking lot and reported that observation to Kyle is insufficient to overcome the general off-duty conduct rule.

It is also important to realize that the parties do not disagree over what happened in the parking lot but only over the proper inferences to draw from those events. Kyle made the decision to pursue Emmitt. Police officers may temporarily detain an individual when they have specific, articulable facts which, taken together with rational inferences from other facts, lead them to conclude that the individual has been engaged in criminal activity. *Terry v. Ohio*, 392 U.S. 1, 21-22 (1968). Emmitt and his sons were innocent of any misconduct, but what the managers observed and reported is sufficient to justify a *Terry* stop. Even if Dillard's had some duty to Emmitt, that duty would not be breached merely because the managers provided Kyle with sufficient information to justify detaining him and searching his vehicle.

Because Dillard's had no duty to Emmitt for Kyle's actions or for the actions of its managers, the trial court did not err when it granted Dillard's motion for summary judgment.

6

IV. *Holding*

The judgment of the trial court is affirmed.

RICK STRANGE

JUSTICE

May 7, 2008

Panel consists of: Wright, C.J.,
McCall, J., and Strange, J.