Opinion filed May 7, 2009











 
 
  
 
 







 
 
  
 
 




Opinion filed May 7, 2009

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh
Court of Appeals

                                                                  ___________

 

                                                          No. 11-08-00062-CV 

                                                    __________

 

                                  GETHSEMANE BROWN, Appellant

 

                                                             V.

 

                                        DILLARD=S, INC., Appellee

 



 

                                          On
Appeal from the 70th District Court

                                               Ector
County, Texas

                                    Trial
Court Cause No. A-121,110

 



 

                                                                   O
P I N I O N

Gethsemane
AEmmitt@ Brown sued Dillard=s, Inc. following his
detention and the search of his vehicle in a mall parking lot.  The trial court
granted Dillard=s
motion for summary judgment.  We affirm.

                                                             I. 
Background Facts[1]








Emmitt
and his sons were going to a track meet.  They stopped at Music City Mall to
exchange cars with his wife who worked at Dillard=s. 
Emmitt=s oldest son,
Jamel, stayed with the car while Emmitt and his other sons went inside Dillard=s.  Emmitt=s trunk was open, and Jamel
sat on the bumper.  Emmitt got his wife=s
keys and drove her car to the spot where he had parked his.  He opened her
trunk, and Jamel unloaded a duffle bag and a blanket from the car and put them
into Emmitt=s wife=s trunk.  Jamel and Emmitt
also moved two Dillard=s
bags from inside her car to her trunk.

Several
Dillard=s managers
were returning from lunch at this same time.  They saw a young man standing
next to a car with the trunk open, saw another car quickly pull up, and then
saw several bags B
including Dillard=s
bags B being pulled
out of the first vehicle and placed into the second. Dillard=s had suffered several
recent Agrab-and-runs,@ and the managers were
concerned that a theft was in progress.  They called Dillard=s and spoke with Kyle Brown,
an off-duty Odessa Police Department Officer who was working part-time for
Dillard=s as a
security officer.  Kyle contacted Henry Jackson, who was also an off-duty
Odessa police officer and who was working part-time as a mall security officer,
and requested assistance.  Kyle then came outside, got into the vehicle with
the managers, and followed the suspicious vehicle.

Emmitt
drove to the mall exit.  Just as he was preparing to pull out onto 42nd Street,
a pickup stopped in front of him, and he was forced to make a sudden stop to
avoid an accident.  The vehicle with the Dillard=s
managers and Kyle stopped behind him.  Jackson got out of the pickup and
started banging on Emmitt=s
window.  Jackson told Emmitt to open his trunk and said that he had been
accused of stealing pants.  Jackson was wearing a uniform and a badge, and he
was armed.  After regaining his composure, Emmitt recognized Jackson from
sporting events and school activities, and he opened the trunk.  Kyle was
standing at the rear of Emmitt=s
car.  He also was in uniform and was wearing a badge.  Emmitt also recognized
Kyle because he had seen him working inside Dillard=s as a security guard.  Kyle directed two of
the Dillard=s managers
to search the trunk.  They did so and, in the process, ripped open two Dillard=s bags.  Emmitt objected to
their search, but Kyle prevented him from interfering.  When the managers found
a receipt, they dropped the bags, got back into their vehicle, and left.

                                                                       II. 
Issues








Dillard=s filed a combination
traditional and no-evidence motion for summary judgment.  The trial court
granted that motion without specifying the motion or the grounds upon which it
relied. Emmitt challenges the trial court=s
judgment with a single issue, contending that the court erred when it granted
Dillard=s motion for
summary judgment.  Because of our resolution of this issue, it is unnecessary
to address Dillard=s
no-evidence motion. 

                                                        III. 
Analysis

A. 
Standard of Review.

When,
as here, a party files a traditional motion for summary judgment, the standard
of review is well settled. Questions of law are reviewed de novo.  St. Paul
Ins. Co. v. Tex. Dep=t
of Transp., 999 S.W.2d 881, 884 (Tex. App.CAustin
1999, pet. denied).  To determine if a fact question exists, we must consider
whether reasonable and fair‑minded jurors could differ in their
conclusions in light of all the evidence presented. Goodyear Tire &
Rubber Co. v. Mayes, 236 S.W.3d 754, 755 (Tex. 2007). We must consider all
the evidence in the light most favorable to the nonmovant, indulging all
reasonable inferences in favor of the nonmovant, and determine whether the
movant proved that there were no genuine issues of material fact and that it
was entitled to judgment as a matter of law.  Nixon v. Mr. Prop. Mgmt. Co.,
690 S.W.2d 546, 548‑49 (Tex. 1985).         B.  Is Dillard=s Responsible for Kyle=s Conduct?

To
determine Dillard=s
liability, the initial question is:  In what capacity was Kyle acting when
Emmitt was stopped and his vehicle searched?  See Cherqui v. Westheimer St.
Festival Corp., 116 S.W.3d 337, 344 (Tex. App.CHouston [14th Dist.] 2003, no pet.).  It is
undisputed that Kyle:

* was an off-duty
Odessa police officer,

 

* was wearing his
OPD uniform and badge,

 

* was working
part-time for Dillard=s
as a security officer and was on the clock,[2]
and

 

* was responding
solely on the basis of information given him by the Dillard=s  managers. 

 

It is also
undisputed that Emmitt was stopped and searched in the mall parking lot near
the exit. Dillard=s
argues that these facts establish, as a matter of law, that Kyle was acting as
a peace officer rather than a private security guard.  Emmitt counters that
summary judgment is improper because a fact question exists on Kyle=s status.








Every
peace officer has a duty to preserve the peace.  Mansfield v. C.F. Bent Tree
Apartment Ltd. P=ship,
37 S.W.3d 145, 151 (Tex. App.CAustin
2001, no pet.).  If an off-duty officer observes and responds to a crime, he
becomes an on-duty officer.  City of Dallas v. Half Price Books, Records,
Magazines, Inc., 883 S.W.2d 374, 377 (Tex. App.CDallas 1994, no writ).  Kyle did not observe
Emmitt commit any suspicious activity but relied entirely upon the Dillard=s managers.  This, however,
does not automatically make him a private security officer.  See Bridges v.
Robinson, 20 S.W.3d 104, 111 (Tex. App.CHouston
[14th Dist.] 2000, no pet.), disapproved of on other grounds, Telthorster
v. Tennell, 92 S.W.3d 457, 464 (Tex. 2002) (an off-duty officer enforcing
general laws can be a peace officer even if his private employer directed him
to perform the duty);  see also Morgan v. City of Alvin, 175 S.W.3d 408,
417 (Tex. App.CHouston
[1st Dist.] 2004, no pet.) (AAn
officer=s public duty
may also be triggered by reasonable suspicion to detain a person for
investigation even if the officer lacks knowledge of facts justifying an arrest
based on probable cause.@). 


In
Blackwell v. Harris County, 909 S.W.2d 135, 139 (Tex. App.CHouston [14th Dist.] 1995,
pet. denied), the court described the test for distinguishing between an
individual acting in a public versus a private capacity:

If he is engaged in
the performance of a public duty such as the enforcement of general laws, his [private
or temporary] employer incurs no vicarious responsibility for his acts, even
though the employer directed him to perform the duty.  On the other hand, if he
was engaged in the protection of the employer=s
property, ejecting trespassers or enforcing rules and regulations promulgated
by the employer, it becomes a jury question as to whether he was acting as a
public officer or as an agent, servant of employer.

 








Most decisions
involving off-duty police officers and suspected criminal activity have applied
this test and found that the officers were acting in their public capacity, but
in Bridges, the court found that a fact question existed concerning the
status of two off-duty officers who were working for Dillard=s as security officers. 
The officers responded to a disturbance between a customer and a store
employee.  They escorted the customer to a back office and bound him with
tape.  20 S.W.3d at 108.  Some witnesses observed the officers strike the
customer.  Id.  Houston police officers arrived, and the customer was
wheeled out of the office, hogtied, on a flatbed dolly.  He subsequently died
of injuries sustained during the confrontation.  Id. at 110.  The court
found that sufficient evidence existed to create a fact question on the
off-duty officers=
status but did not specifically delineate the determinative facts.  Id.
at 111.  In subsequent cases, the court highlighted that the officers were
protecting Dillard=s
property or enforcing Dillard=s
rules rather than public laws, that the incident occurred on the store=s premises, and that the
officers physically abused the customer.  See Cherqui, 116 S.W.3d at
346; Larkin v. Johnson, 44 S.W.3d 188, 190 (Tex. App.CHouston [14th Dist.] 2001,
pet. denied).

Kyle
acted on information that Emmitt was stealing property from a car in the mall
parking lot.  This is a general law not a Dillard=s
rule.[3]  The property
included Dillard=s
bags, but Kyle was not specifically protecting Dillard=s property.[4] 
Cf. Mansfield, 37 S.W.3d at 149-50 (when there is no immediate crime and
the off-duty officer is protecting a private employer=s property or otherwise enforcing a private
employer=s rules or
regulations, the trier of fact determines whether the officer was acting as a
public officer).  The activity the Dillard=s
managers observed, and the subsequent stop and search, occurred in a public area
rather than in the store.  Finally, the act of stopping a vehicle driving in a
public area and forcing the owner to allow a search of his trunk based upon
allegations of theft is the act of a peace officer enforcing a general law.[5] 
See Ogg v. Dillard=s,
Inc., 239 S.W.3d 409, 419 (Tex. App.CDallas
2007, pet. denied) (off-duty officer who detained a customer at Dillard=s direction to investigate
possible credit card abuse was still acting as a public official because he was
enforcing a general law).  The trial court did not err by finding that Dillard=s was not liable for Kyle=s conduct.  

C. 
Is Dillard=s
Liable for its Managers=
Conduct?

It
is undisputed that the managers were returning from lunch in a privately owned
vehicle; that, when they observed suspected criminal activity in the mall
parking lot, they called Dillard=s
and spoke with Kyle; and that they participated in the stop and search of
Emmitt=s vehicle. 
Emmitt argues that Dillard=s
is liable for their actions under the doctrines of respondeat superior, agency,
or nondelegable duty.








The
general rule is that employers are only liable for the off-duty torts of their
employees that are committed on the employers=
premises or with the employers=
chattels.  Loram Maint. of Way, Inc. v. Ianni, 210 S.W.3d 593, 596 (Tex.
2006).  Emmitt does not contend that either exception is present in this case
but concentrates primarily on the propriety of the individuals= actions, highlighting, for
example, that he did nothing wrong and that no one witnessed a crime.  He also
argues that the managers instructed Kyle on what to do.  We have previously
found that Kyle was acting as a public officer.  Because he was acting as a
public officer, the mere fact that the managers reported a suspected crime and
were present during the stop and search does not make Dillard=s liable.

Nor
is Dillard=s otherwise
liable.   Emmitt is critical of Dillard=s
security training programs but has cited no law creating a general duty to
train individuals on how to behave or act while off duty, let alone when faced
with suspected criminal activity, or produced any evidence that the managers= off-duty actions were
dictated by company policy.  In fact, the evidence was that company policy
prohibited employees from following a suspected shoplifter past the sidewalk. 
The managers believed that Dillard=s
merchandise had been stolen, and as managers they had an interest in minimizing
theft from their store.  The mere fact that they saw what they thought was a
criminal act in the parking lot and reported that observation to Kyle is
insufficient to overcome the general off-duty conduct rule.

It
is also important to realize that the parties do not disagree over what
happened in the parking lot but only over the proper inferences to draw from
those events.  Kyle made the decision to pursue Emmitt.  Police officers may
temporarily detain an individual when they have specific, articulable facts
which, taken together with rational inferences from other facts, lead them to
conclude that the individual has been engaged in criminal activity.  Terry
v. Ohio, 392 U.S. 1, 21-22 (1968).  Emmitt and his sons were innocent of
any misconduct, but what the managers observed and reported is sufficient to
justify a Terry stop.  Even if Dillard=s
had some duty to Emmitt, that duty would not be breached merely because the
managers provided Kyle with sufficient information to justify detaining him and
searching his vehicle.

Because
Dillard=s had no duty
to Emmitt for Kyle=s
actions or for the actions of its managers, the trial court did not err when it
granted Dillard=s
motion for summary judgment.








                                                        IV. 
Holding 

 The
judgment of the trial court is affirmed.

 

 

RICK STRANGE

JUSTICE

 

May 7, 2008

Panel consists of:  Wright, C.J.,

McCall, J., and Strange, J.









     [1]The record reflects
that there are racial overtones present in this case.   Emmitt is
African-American and his wife is Hispanic.  One of the security officers is
African-American, and  several of the Dillard=s
managers have Hispanic surnames.  Emmitt=s
car was stopped and searched because several Dillard=s managers observed Emmitt and his son, who was wearing
basketball shorts, a muscle shirt, and a do-rag, commit what they perceived to
be suspicious activity.  Emmitt=s causes of
action include an allegation that Dillard=s
deprived him of his civil rights by profiling minority customers, shoppers, and
patrons.





     [2]Kyle testified that
he identified himself as a police officer working for Dillard=s.  Emmitt did not recall him identifying himself. 





     [3]See Tex. Penal Code Ann. ' 30.04 (Vernon Supp. 2008) (burglary of a vehicle). 





     [4]For an example of
an off-duty officer protecting his private employer=s property, see Larkin, 44 S.W.3d at 189
(off-duty officer was protecting employer=s
property when marking receipts as customers left store).





     [5]We are cognizant of
Tex. Civ. Prac. & Rem. Code Ann. ' 124.001 (Vernon 2005), which allows a person who
reasonably believes that another has stolen or is attempting to steal property
to detain that person in a reasonable manner and for a reasonable time to
investigate ownership of the property.  However, this was not a stop in the
store or immediately outside it, nor was it a stop by civilian employees.