TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-00-00502-CV






Robert Andrew Mansfield, Appellant



v.



C.F. Bent Tree Apartment Limited Partnership, Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT


NO. 98-01732, HONORABLE PAUL DAVIS, JUDGE PRESIDING 






 Appellant Robert Andrew Mansfield sued appellee C.F. Bent Tree Apartment
Limited Partnership (Bent Tree) for injuries he received from Bent Tree's security guard, an off-duty police officer. Mansfield sustained the injuries while being detained for trespass and indecent
exposure. The trial court disposed of all claims against Bent Tree in two orders granting Bent
Tree summary judgment. We hold that Bent Tree is not vicariously liable for Mansfield's injuries
because the security guard was acting in his official capacity as a police officer by arresting
Mansfield, and that Mansfield's pleadings allege a premises-liability claim that is supported by no
evidence. Consequently, we affirm the trial court.


FACTUAL AND PROCEDURAL BACKGROUND

 On June 21, 1997, at about 4:30 a.m., Mansfield drove to and parked his car at
Bent Tree's apartment complex. Although not a resident at Bent Tree, Mansfield said he had
visited the complex, but no particular person approximately six times in the past under similar
circumstances. After parking his car, Mansfield took off his t-shirt and shorts, which he hid
beside an air-conditioning unit. At some point he removed his briefs and put on a woman's bra
and panties. He carried his cigarettes, lighter, and two pairs of women's panties as padding in the
bra. Mansfield had cut a hole in the panties so that his penis could be exposed at all times. 
Mansfield wandered around the area in this manner but was standing near the air-conditioning unit
when Bent Tree's security guard, Robert Field, confronted him. Field, a City of Austin police
officer, was a resident of Bent Tree where he performed security patrols while off-duty.

 Field's incident report for the Austin Police Department described Mansfield as a
"suspicious subject walking in the parking lot very early in the morning . . . [who] seemed to be
looking around to see if anyone else was around." From a distance, Field stated that Mansfield
appeared to be wearing skimpy jogging clothes. Field followed the suspect until he went into
some bushes, at which point Field shined his flashlight on Mansfield. 

 Mansfield stated in depositions that when he was discovered, he began to put on
his shirt. He recounted that Field "hurried up to me, he pointed a gun at my head, showed me a
badge, identified himself as police, told me to lay down, face down on the ground, [and] put my
hands behind my back." Field reported that Mansfield's penis was "hanging out of the underpants
fully exposed" and that he suspected Mansfield went behind the bushes to masturbate. Mansfield
claimed to be urinating. After Mansfield was lying on the ground, Field "walked over to the
nearest window, banged on the window, turned, came back, walked over to me, gave me a violent
kick to my left rib cage, went back to the window and continued to pound on the window until he
woke up the people living in the apartment." Mansfield heard Field tell the residents that he was
a police officer and that he wanted them to call for assistance. Police eventually arrived and took
Mansfield to the police department. Mansfield suffered a ruptured spleen and fractured ribs.

 Mansfield filed suit on February 17, 1998, against Bent Tree, Field, and the City
of Austin. Mansfield eventually settled his claims against Field and the city. On June 2, 2000,
the trial court granted Bent Tree's first amended motion for summary judgment. The summary
judgment did not dispose of all of Mansfield's claims against Bent Tree. The trial court denied
Bent Tree's second motion for summary judgment, which sought a final take-nothing judgment
on Mansfield's remaining claims. However, the trial court granted Bent Tree's third motion for
summary judgment on June 29, 2000, disposing of the remaining claims and making both orders
final and subject to appeal. See Mafrige v. Ross, 866 S.W.2d 590, 591 (Tex. 1993).


DISCUSSION

 A traditional motion for summary judgment is properly granted when the movant
establishes that there are no genuine issues of material fact to be decided and that it is entitled to
judgment as a matter of law. Tex. R. Civ. P. 166a(c); Lear Siegler, Inc. v. Perez, 819 S.W.2d
470, 471 (Tex. 1991). All doubts are resolved against the movant, and the reviewing court must
view the evidence in the light most favorable to the non-movant. Lear Siegler, 819 S.W.2d at
471. We review such motions de novo. Thompson v. City of Austin, 979 S.W.2d 676, 679 (Tex.
App.--Austin 1998, no pet.).

 A no-evidence summary judgment is essentially a pretrial directed verdict; thus, we
apply the same legal sufficiency standard in reviewing the no-evidence summary judgment as we
apply in reviewing a directed verdict. Jackson v. Fiesta Mart, Inc., 979 S.W.2d 68, 70 (Tex.
App.--Austin 1998, no pet.). The appellate court, then, must determine whether the plaintiff
produced any evidence of probative force to raise fact issues on the material questions presented. 
Id. The appellate court must consider all of the evidence in the light most favorable to the party
against whom the no-evidence standard was rendered, and every reasonable inference must be
indulged in favor of the nonmovant and any doubts resolved in its favor. Id.

 A no-evidence summary judgment is properly granted if the non-movant fails to
bring forth more than a scintilla of probative evidence to raise a genuine issue of material fact as
to an essential element of the non-movant's claim on which the non-movant would have had the
burden of proof at trial. Tex. R. Civ. P. 166a(i); see also Merrell Dow Pharm., Inc. v. Havner,
953 S.W.2d 706, 711 (Tex. 1997). If the evidence supporting a finding rises to a level that would
enable reasonable, fair-minded persons to differ in their conclusions, then more than a scintilla of
evidence exists. Merrell Dow, 953 S.W.2d at 711. Less than a scintilla of evidence exists when
the evidence is "so weak as to do no more than create a mere surmise or suspicion" of a fact, and
the legal effect is that there is no evidence. Kindred v. Con/Chem, Inc., 650 S.W.2d 61, 63 (Tex.
1983).


Vicarious Liability

 Mansfield alleges that Bent Tree was vicariously liable for Field's conduct because
Field was "acting at all times material to this cause of action in the course and scope of his
employment" with Bent Tree. An employer may be vicariously liable for the tortious acts of its
employee under the doctrine of respondeat superior. Knutson v. Morton Foods, Inc., 603 S.W.2d
805, 807 (Tex. 1980). Respondeat superior imposes liability on the employer when the negligence
of its employee, acting in the scope of his employment, is the proximate cause of another's injury. 
DeWitt v. Harris County, 904 S.W.2d 650, 654 (Tex. 1995).

 Bent Tree's first summary judgment was based on the proposition that under Texas
law, an off-duty police officer who observes a crime immediately becomes an on-duty police
officer. See City of Dallas v. Half Price Books, Records, Magazines, Inc., 883 S.W.2d 374, 377
(Tex. App.--Dallas 1994, no writ) (citing Hafdahl v. State, 805 S.W.2d 396, 401 (Tex. Crim.
App. 1990)). Bent Tree maintains that once Field observed Mansfield engaged in criminal
conduct--trespassing and indecent exposure--Field immediately became an on-duty police officer. 
As a result, Bent Tree contends that Field's conduct from that point forward was no longer within
the scope of his private employment but was performance of his duties as a police officer, such
that Bent Tree could not be vicariously liable for Field's conduct as a matter of law.

 Whether or not Field became an on-duty police officer when he first observed
Mansfield's suspicious behavior, by Mansfield's own admission Field was performing his duties
as a police officer at the time Mansfield was injured. Mansfield recalled that Field showed his
badge and identified himself as a police officer when he asked Mansfield to lay on the ground. 
Field was attempting to get police assistance when he returned to Mansfield and kicked him. In
criminal cases, these actions reflect that an officer is acting in his official capacity. See Hafdahl,
805 S.W.2d at 401 ("[W]hen the police officer stopped at the scene of the accident and approached
appellant shouting 'halt, halt, stop, police,' the officer was no longer off duty."); Selvage v. State,
680 S.W.2d 17, 21 (Tex. Crim. App. 1984) ("[The officer] assumed the role of a peace officer
when he removed his coat to identify himself as a Deputy Sheriff and approached appellant in an
attempt to deter him from wrongdoing.").

 In determining the status of a police officer, we ask "in what capacity was the
officer acting at the time he committed the acts for which the complaint is made?" Blackwell v.
Harris County, 909 S.W.2d 135, 139 (Tex. App.--Houston [14th Dist.] 1995, writ denied) (citing
Glenmar Cinestate, Inc. v. Farrell, 292 S.E.2d 366 (Va. 1982)); accord Texas & N.O.R. Co. v.
Parsons, 113 S.W. 914, 915 (Tex. 1908); Hudson v. St. Louis S.W. Ry. Co. of Tex., 293 S.W.
811, 813 (Tex. Comm'n App., holding approved), and reh'g overruled, 295 S.W. 577 (Tex.
Comm'n App. 1927). If the officer is performing a public duty, such as the enforcement of
general laws, the officer's private employer incurs no vicarious responsibility for that officer's
acts, even though the employer may have directed the activities. Blackwell, 909 S.W.2d at 139. 
If the officer was engaged in protecting the employer's property, ejecting trespassers, or enforcing
rules and regulations promulgated by the employer, however, the trier of fact decides whether the
officer was acting as a public officer or as a servant of the employer. Id.

 Here, Field identified himself and showed his badge to Mansfield prior to arresting
him. Mansfield admitted that because of his attire, he expected to be arrested if discovered by a
police officer. Field's actions cannot be construed in any other way. As a matter of law, Field
was performing his public duty by detaining Mansfield until he could be removed to the police
station. Bent Tree cannot be held liable for Field's actions while he was arresting Mansfield.

 Mansfield cites to numerous cases to support his proposition that Bent Tree may
be liable for injuries that Mansfield sustained; however, none of these cited cases involve facts
where the off-duty officer, as a matter of law, had assumed the role of a peace officer when the
event in dispute occurred. See Parsons, 113 S.W. at 916 (officer never showed intent to arrest
trespassers but only intended to put them off the company's property); Hudson, 293 S.W. at 814
(guard's acts in protecting property from picket line and ejecting trespassers "could be in
furtherance of . . . employer's service"); Lancaster v. Carter, 255 S.W. 392, 396 (Tex. 1923)
(officer was following employer's instructions to catch suspicious character riding train); Rucker
v. Barker, 192 S.W. 528, 529 (Tex. 1917) (officer took no steps toward arrest until he consulted
with his private employer); Bridges v. Robinson, 20 S.W.3d 104, 111 (Tex. App.--Houston [14th
Dist.] 2000, no pet.) (evidence insufficient to show that security officers who injured victim
assumed role as public peace officers); Bounty Ballroom v. Bain, 211 S.W.2d 248, 252 (Tex. Civ.
App.--Amarillo 1948, writ ref'd n.r.e.) (officer hired to keep down disturbances and eject those
who caused disturbances was performing according to terms of his employment); Perkins Bros.
Co. v. Anderson, 155 S.W. 556, 558 (Tex. Civ. App.--Dallas 1913, writ ref'd) (officer was
merely protecting and recovering employer's property, rather than attempting arrest);
Southwestern Portland Cement Co. v. Reitzer, 135 S.W. 237, 240-41 (Tex. Civ. App. 1911, no
writ) (officer was recovering employer's allegedly stolen tools). In cases such as these, the
question of the officer's role is answered by the trier of fact. Blackwell, 909 S.W.2d at 139. 
Here, however, the facts clearly show that Field had assumed the role of a police officer prior to
injuring Mansfield.

 Mansfield finally asserts that "Field's detention of Mansfield was no more of an
official act than could have been undertaken by any Texas citizen, who has the right to arrest any
other person, without a warrant, when the offense is committed in his presence . . . if the offense
is classed as a felony or as an offense against the public peace." See Tex. Code Crim. Proc. Ann.
art. 14.01(a) (West 1977); cf. Dunn v. Texas, 979 S.W.2d 403, 409 (Tex. App.--Amarillo 1998,
pet. ref'd) (holding that criminal trespass can constitute a breach of the peace justifying a citizen's
arrest of the trespasser).

 Although any citizen could have arrested Mansfield, Field, as a police officer, had
a duty to do so. Every peace officer has a duty to preserve the peace. Tex. Code Crim. Proc.
Ann. art. 2.13(a) (West Supp. 2001). An officer must "arrest offenders without warrant in every
case where the officer is authorized by law, in order that they may be taken before the proper
magistrate or court and be tried." Id. art. 2.13(b)(4). Peace officers are not relieved of this
obligation because they are off-duty. Blackwell, 909 S.W.2d at 139 (citing Moore v. State, 562
S.W.2d 484, 486 (Tex. Crim. App. 1978)). A person in Mansfield's situation, then, could expect
to be arrested if discovered by any police officer, whether on-duty or off.

 We agree with Bent Tree's argument that a "private citizen could have walked away
and called the police. . . . [B]ut Officer Field, unlike a private citizen, was required to arrest
[Mansfield]." As proof that Field was acting in his official capacity, Bent Tree notes that Field
was disciplined by the Austin Police Department following the arrest: "A private citizen would
never face disciplinary suspension by the Austin Police Department following such an arrest." 
Because Field was under a duty to arrest Mansfield, and the injuries occurred during this
detention, we overrule Mansfield's point of error regarding vicarious liability and turn to his
allegations of negligence and gross negligence.


Negligence and Gross Negligence

 Mansfield claims that Bent Tree was negligent and grossly negligent for failing to
adopt a written policy instructing Field in his duties; failing to require adherence to that policy;
failing to provide adequate instruction that Field's responsibility was to protect property not
people; failing to provide Field with equipment needed to perform his duties, such as handcuffs,
communication equipment, and uniform; failing to ensure that Field had on his person this
necessary equipment; failing to provide Field with back-up manpower; and failing to provide
adequate lighting on its property. Bent Tree's third motion for summary judgment, which
disposed of these claims, asserted that there was no evidence that Bent Tree owed Mansfield any
duty of care; that there was no evidence that Bent Tree injured Mansfield willfully, wantonly, or
with gross negligence; and that as a matter of law, Bent Tree's alleged negligence was not a
proximate cause of Mansfield's injuries.

 Mansfield maintains that granting the summary judgment was error because the trial
court wrongly applied "the legal duties owed by a landowner to a trespasser injured by premises
defect to Mansfield's allegation of active negligence on the part of Bent Tree . . . ." In general,
a landowner owes a trespasser injured as a result of a premises defect no higher duty than to
refrain from injuring the trespasser by willful, wanton, or grossly negligent conduct. Lipton v.
Wilhite, 902 S.W.2d 598, 599 (Tex. App.--Houston [1st Dist.] 1995, writ denied). Mansfield
counters that "a landowner is not relieved of its duty to exercise ordinary care in its activities
regardless of the status of the person who comes upon the landowner's property," citing Sibai v.
Wal-Mart Stores, Inc., 986 S.W.2d 702, 706 (Tex. App.--Dallas 1999, no pet.). We must
determine whether the facts at hand raise a premises-liability or a negligent-activity claim.

 Recovery on a negligent-activity theory requires that the alleged injury occur "by
or as a contemporaneous result of the activity itself rather than by a condition created by the
activity." Keetch v. Kroger Co., 845 S.W.2d 262, 264 (Tex. 1992). Negligence that occurs by
or as a contemporaneous result of an activity means "doing or failing to do what a person of
ordinary prudence in the same or similar circumstances would have not done or done." 
Timberwalk Apartments, Partners v. Cain, 972 S.W.2d 749, 753 (Tex. 1998) (footnote omitted). 
However, negligence that results from a "condition created by the activity" means a "failure to use
ordinary care to reduce or eliminate an unreasonable risk of harm created by a premises condition
which the owner . . . [of land] knows about or in the exercise of ordinary care should know
about." Id. (footnote omitted). "A complaint that a landowner failed to provide adequate security
against criminal conduct is ordinarily a premises liability claim." Id. (footnote omitted).

 In Timberwalk, the plaintiff asserted that "defendants' failure to provide adequate
security measures created an unreasonable risk of harm that defendants knew or should have
known about and yet failed to correct." Id. In that case, the only activity that injured the plaintiff
was perpetrated by a third-party criminal. The apartment complex's alleged failure to provide
adequate security was not a negligent activity. The plaintiff's allegations raised only a premises-liability claim.

 Here, Mansfield, an admitted trespasser, is not in a position to assert that Bent Tree
failed to provide adequate security, but his complaint that Bent Tree failed to provide adequate
training or equipment to its guards is still governed by Timberwalk. Mansfield alleged that Bent
Tree failed to properly prepare its employee Robert Field to perform his duties as a security
officer. These acts and omissions, Mansfield claims, proximately caused his injuries. The only
activity that injured Mansfield, however, occurred while Field was arresting Mansfield. Any
failure of Bent Tree to act prior to this injury presents a premises-liability claim. Under premises-liability law, Bent Tree's only duty was to refrain from injuring Mansfield willfully, wantonly,
or with gross negligence. See Lipton, 902 S.W.2d at 599.

 Bent Tree asserts that Mansfield offered no evidence that it breached its duty to
refrain from injuring Mansfield willfully, wantonly, or with gross negligence. Mansfield fails to
identify any evidence showing that Bent Tree breached this duty. Instead, Mansfield points to
evidence that he claims shows Bent Tree failed to use reasonable care. This is not the duty that
Bent Tree owed a trespasser. We overrule Mansfield's second point of error.


CONCLUSION

 Because Field was acting in his official capacity as a police officer when he arrested
Mansfield, we hold that Bent Tree is not vicariously liable for any injuries Mansfield sustained
while being so detained. Further, we hold that Mansfield alleged only a premises-liability claim
that is not supported by any evidence. We therefore affirm the trial court's orders granting
summary judgment in favor of Bent Tree.



 

 Bea Ann Smith, Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Patterson

Affirmed

Filed: January 11, 2001

Publish


ree owed Mansfield any
duty of care; that there was no evidence that Bent Tree injured Mansfield willfully, wantonly, or
with gross negligence; and that as a matter of law, Bent Tree's alleged negligence was not a
proximate cause of Mansfield's injuries.

 Mansfield maintains that granting the summary judgment was error because the trial
court wrongly applied "the legal duties owed by a landowner to a trespasser injured by premises
defect to Mansfield's allegation of active negligence on the part of Bent Tree . . . ." In general,
a landowner owes a trespasser injured as a result of a premises defect no higher duty than to
refrain from injuring the trespasser by willful, wanton, or grossly negligent conduct. Lipton v.
Wilhite, 902 S.W.2d 598, 599 (Tex. App.--Houston [1st Dist.] 1995, writ denied). Mansfield
counters that "a landowner is not relieved of its duty to exercise ordinary care in its activities
regardless of the status of the person who comes upon the landowner's property," citing Sibai v.
Wal-Mart Stores, Inc., 986 S.W.2d 702, 706 (Tex. App.--Dallas 1999, no pet.). We must
determine whether the facts at hand raise a premises-liability or a negligent-activity claim.

 Recovery on a negligent-activity theory requires that the alleged injury occur "by
or as a contemporaneous result of the activity itself rather than by a condition created by the
activity." Keetch v. Kroger Co., 845 S.W.2d 262, 264 (Tex. 1992). Negligence that occurs by
or as a contemporaneous result of an activity means "doing or failing to do what a person of
ordinary prudence in the same or similar circumstances would have not done or done." 
Timberwalk Apartments, Partners v. Cain, 972 S.W.2d 749, 753 (Tex. 1998) (footnote omitted). 
However, negligence that results from a "condition created by the activity" means a "failure to use
ordinary care to reduce or eliminate an unreasonable risk of harm created by a premises condition
which the owner . . . [of land] knows about or in the exercise of ordinary care should know
about." Id. (footnote omitted). "A complaint that a landowner failed to provide adequate security
against criminal conduct is ordinarily a premises liability claim." Id. (footnote omitted).

 In Timberwalk, the plaintiff asserted that "defendants' failure to provide adequate
security measures created an unreasonable risk of harm that defendants knew or should have
known about and yet failed to correct." Id. In that case, the only activity that injured the plaintiff
was perpetrated by a third-party criminal. The apartment complex's alleged failure to provide
adequate security was not a negligent activity. The plaintiff's allegations raised only a premises-liability claim.

 Here, Mansfield, an admitted trespasser, is not in a position to assert that Bent Tree
failed to provide adequate security, but his complaint that Bent Tree failed to provide adequate
training or equipment to its guards is still governed by Timberwalk. Mansfie