Opinion issued May 31, 2007 

 












In The

Court of Appeals

For The

First District of Texas






NO. 01-05-00838-CV






CRAIG THOMAS, KAREN ANN THOMAS, KAITLIN JADE THOMAS,
and CAROLINE ANGELENE THOMAS, Appellants


V.


CNC INVESTMENTS, L.L.P, Appellee






On Appeal from the 190th District Court

Harris County, Texas

Trial Court Cause No. 2004-32012




O P I N I O N

 Appellants, Craig Thomas, Karen Ann Thomas, Kaitlin Jade Thomas, and
Caroline Angelene Thomas, appeal from a take-nothing summary judgment rendered
upon the motion of appellee, CNC Investments, L.L.P. ("CNC"). We determine
whether the trial court erred by granting CNC's motion for summary judgment on
appellants' causes of action against CNC for vicarious liability for assault, premises
liability, and negligent hiring. We affirm the judgment of the trial court. 

Background

 On July 29, 2002, Darrell Gordon, a Harris County Sheriff's deputy, was
working an extra job at the Oaks of Woodforest apartment complex. (1) At about 12:15
a.m., Deputy Gordon requested assistance from Craig Thomas and Toby Kroger, (2) who
were also Harris County Sheriff's deputies, to conduct a property inspection of the
complex because Deputy Gordon was working alone that night. Deputies Thomas
and Kroger were both off duty, working an extra job at another apartment complex
in the area, and agreed to help Deputy Gordon patrol the Oaks of Woodforest
apartment complex. While the deputies were patrolling the complex, a tenant gave
them a tip about a stolen Dodge Durango in the apartment complex parking lot. 
During their patrol of the apartment complex, the deputies saw a Dodge Durango
matching the informant's description of the stolen vehicle. Deputies Gordon and
Kroger approached the driver of the Dodge Durango. The suspect started to drive
away, and Deputies Gordon and Kroger shouted, "Sheriff's Department. Stop the
vehicle. Stop the vehicle." The suspect revved the truck's engine and drove past
Deputies Kroger and Gordon toward Deputy Thomas. Deputy Thomas turned his
flashlight on himself "so that [the driver] could see that [Deputy Thomas] had a badge
and 'Sheriff' across [his] chest." When the suspect continued to accelerate toward
Deputy Thomas, all of the deputies fired shots at the driver. Deputy Thomas fired
shots first, then Deputies Kroger and Gordon fired several shots. The suspect ran
over Deputy Thomas. At some point while Deputy Gordon was shooting at the
suspect, he accidentally shot Deputy Thomas in the leg. While the suspect was
driving away, Deputy Kroger fired four more rounds, shooting the suspect in the back
of the neck. 

 Appellants sued CNC, the company that paid Deputy Gordon to patrol the Oaks
of Woodforest apartment complex. In their petition, appellants alleged that (1) CNC
was vicariously liable for Deputy Gordon's assault of Deputy Thomas, i.e., Deputy
Gordon's reckless discharge of his firearm, which injured Deputy Thomas; (2) CNC
had a duty to use ordinary care to protect Deputy Thomas against an unreasonable and
foreseeable risk of harm from the criminal acts of third parties on its premises because
CNC failed to have adequate security and to maintain the access gate at its apartment
complex; and (3) CNC did not use ordinary care in determining whether Deputy
Gordon was competent to be hired to patrol its premises. 

 In its answer, CNC entered a general denial and pleaded that (1) CNC was not
vicariously liable because Deputy Gordon was acting as a public-safety officer when
he accidentally shot Deputy Thomas, (2) CNC was not vicariously liable because
Deputy Gordon was an independent contractor and not its employee, (3) Deputy
Thomas was barred from recovering damages for injuries on its premises under the
"firefighter's rule," (4) CNC was not liable for Deputy Thomas's injuries on its
premises because his injuries were the cause of third parties beyond its control, and
(5) Deputy Thomas's recovery should be reduced or barred under the doctrine of
proportionate responsibility. 

 CNC moved for traditional summary judgment on appellants' assault cause of
action on the grounds that (1) CNC was not vicariously liable because Deputy
Gordon was acting as a public-safety officer when he shot Deputy Thomas and (2)
CNC was not vicariously liable because Deputy Gordon's conduct was negligent, not
intentional, and, therefore, CNC could not be held liable for its independent
contractor's negligence. (3)

 CNC moved for traditional summary judgment against appellants' premises-
liability (4) cause of action on the grounds that (1) Deputy Thomas was barred from
recovering for his injuries on its premises under the "firefighter's rule"; (2) CNC's
failure to have an additional off-duty Sheriff's deputy on the premises was not the
proximate cause of Deputy Thomas's injuries; (3) CNC's failure to maintain the
access gate on the premises was not the proximate cause of Deputy Thomas's injuries;
and (4) Deputy Thomas was a licensee who had actual knowledge of the danger of
criminal activity at the complex, and, therefore, CNC did not have a duty to Deputy
Thomas. 

 CNC moved for traditional summary judgment against appellants' negligent-hiring cause of action on the ground that CNC did not breach any duty because it had
used ordinary care in hiring Deputy Gordon to do security work because he was a
Sheriff's deputy. CNC moved for no-evidence summary judgment against appellants'
negligence-hiring cause of action on the ground that there was no evidence that
Deputy Gordon was not qualified to do security work. 

 On August 5, 2005, the trial court granted CNC's motion for summary
judgment. The trial court did not specify on what basis it rendered summary
judgment. On August 22, 2005, the trial court signed a final judgment dismissing all
of appellants' claims against CNC. Standard of Review and Burdens of Proof

 The propriety of summary judgment is a question of law, and we thus review
the trial court's ruling de novo. Provident Life & Accident Ins. Co. v. Knott, 128
S.W.3d 211, 215 (Tex. 2003). In reviewing a summary judgment, evidence favorable
to the non-movant is taken as true, and all reasonable inferences are indulged in the
non-movant's favor. Johnson County Sheriff's Posse v. Endsley, 926 S.W.2d 284,
285 (Tex. 1996). When a summary-judgment order does not state the grounds upon
which it was granted, the summary judgment may be affirmed on any of the movant's
theories that has merit. Cincinnati Life Ins. Co. v. Cates, 927 S.W.2d 623, 627 (Tex.
1996). Appellate courts should consider all grounds for summary judgment that the
movant presented to the trial court when they are properly preserved for appeal. Id.
at 625. Thus, the party appealing from such a judgment must show that each of the
independent arguments alleged in the motion is insufficient to support the order.
Tilotta v. Goodall, 752 S.W.2d 160, 161 (Tex. App.--Houston [1st Dist.] 1988, writ
denied); McCrea v. Cubilla Condo. Corp., 685 S.W.2d 755, 757 (Tex.
App.--Houston [1st Dist.] 1985, writ ref'd n.r.e.).

 The movant for traditional summary judgment has the burden of showing that
there is no genuine issue of material fact and that he is entitled to judgment as a
matter of law. Tex. R. Civ. P. 166a(c); Park Place Hosp. v. Estate of Milo, 909
S.W.2d 508, 510 (Tex. 1995); Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 548
(Tex. 1985). A defendant moving for traditional summary judgment must either
disprove at least one element of each of the plaintiff's causes of action or
conclusively establish each essential element of its affirmative defense, thereby
rebutting the plaintiff's causes of action. Cathey v. Booth, 900 S.W.2d 339, 341 (Tex.
1995).

 A no-evidence motion for summary judgment is essentially a directed verdict
granted before trial, to which we apply a legal-sufficiency standard of review. King
Ranch, Inc. v. Chapman, 118 S.W.3d 742, 750-51 (Tex. 2003). In general, a party
seeking a no-evidence summary judgment must assert that no evidence exists as to
one or more of the essential elements of the non-movant's claims on which the
non-movant would have the burden of proof at trial. Flameout Design & Fabrication,
Inc. v. Pennzoil Caspian Corp., 994 S.W.2d 830, 834 (Tex. App.--Houston [1st
Dist.] 1999, no pet.). Once the movant specifies the elements on which there is no
evidence, the burden shifts to the non-movant to raise a fact issue on the challenged
elements. Tex. R. Civ. P. 166a(i). A no-evidence summary judgment will be
sustained on appeal when (1) there is a complete absence of evidence of a vital fact,
(2) the court is barred by rules of law or of evidence from giving weight to the only
evidence offered by the non-movant to prove a vital fact, (3) the evidence offered by
the non-movant to prove a vital fact is no more than a scintilla, or (4) the non-movant's evidence conclusively establishes the opposite of a vital fact. King Ranch,
118 S.W.3d at 751.

Summary Judgment

 In seven issues, appellants argue that the trial court erred by granting CNC's
motion for summary judgment on their causes of action against CNC for vicarious
liability for assault, premises liability, and negligent hiring.

A. Vicarious Liability for Assault

 In issues one and two, appellants argue that the trial court erred by granting
CNC's traditional motion for summary judgment on their assault cause of action
against CNC. In issue one, appellants argue that the trial court erred by granting
CNC's motion for traditional summary judgment on the ground that CNC was not
vicariously liable because Deputy Gordon was acting as a public-safety officer when
he shot Deputy Thomas. In issue two, appellants argue that the trial court erred by
granting CNC's motion for traditional summary judgment on the ground that CNC
was not vicariously liable because Deputy Gordon's conduct was negligent, not
intentional, and, therefore, CNC could not be held liable for its independent
contractor's negligence. 

 CNC alleged in its summary-judgment motion that it was entitled to traditional
summary judgment on appellants' assault cause of action based on the theory of
respondeat superior because Deputy Gordon was acting as a public-safety officer
when Deputy Thomas was shot. To be entitled to traditional summary judgment,
CNC had to prove that there was no issue of material fact that Deputy Gordon was
performing a public duty, such as the enforcement of general laws. See Mansfield v.
C.F. Bent Tree Apartment Ltd. P'ship, 37 S.W.3d 145, 149 (Tex. App.--Austin 2001,
no pet.).

 Under the doctrine of respondeat superior, an employer may be vicariously
liable for the tortious acts of an employee. St. Joseph Hosp. v. Wolff, 94 S.W.3d 513,
541-42 (Tex. 2002) (quoting Baptist Mem'l Hosp. Sys. v. Sampson, 969 S.W.2d 945,
947 (Tex. 1998)); Mansfield, 37 S.W.3d at 149. When determining the status of an
off-duty officer, we ask, "[I]n what capacity was the officer acting at the time he
committed the acts for which the complaint is made?" Blackwell v. Harris County,
909 S.W.2d 135, 139 (Tex. App.--Houston [14th Dist.] 1995, writ denied). If a
public-safety officer is performing a public duty, such as enforcement of general laws,
he is acting in the course and scope of his employment as a police officer, and the
private employer is not vicariously liable for the officer's actions, even if the
employer may have directed those activities. Mansfield, 37 S.W.3d at 150; Larkin v.
Johnson, 44 S.W.3d 188, 189-90 (Tex. App.--Houston [14th Dist.] 2001, pet.
denied); see also Blackwell, 909 S.W.2d at 139. If an off-duty officer observes a
crime, he becomes, as a matter of law, a public-safety officer. Mansfield, 37 S.W.3d
at 150; City of Dallas v. Half Price Books, Records, Magazines, Inc., 883 S.W.2d
374, 377 (Tex. App.--Dallas 1994, no writ) (explaining that public-safety officer
becomes government agent when he begins to function as one). 

 Appellants cite to Bridges v. Robinson to support their proposition that CNC
may be liable for injuries that Deputy Thomas sustained; however, that case did not
involve facts in which the off-duty officers had assumed, as a matter of law, the role
of public-safety officers when the event in dispute occurred. See id., 20 S.W.3d 104,
111 (Tex. App.--Houston [14th Dist.] 2000, no pet.) (noting that if police officer is
"engaged in the protection of the employer's property, ejecting trespassers or
enforcing rules and regulations promulgated by the employer," it then becomes jury
question as to whether he was acting as public officer or as agent of private
employer). In Bridges, a Dillard's customer argued with two customer service
employees. During the argument, two salaried Dillard's security officers, who were
also Harris County Sheriff's deputies, asked the customer to provide identification
and escorted him to a back office. See id. at 108. The summary-judgment evidence
showed that the officers hogtied the customer and rode and otherwise abused him
until he died. See id. at 109-10. The Bridges court held that, considering the
summary-judgment evidence, it was unclear if and when those officers assumed a role
as public-safety officers; therefore, whether at material times those officers were
acting in the course and scope of their employment remained a disputed fact issue. 
See id. at 110; see also Blackwell, 909 S.W.2d at 139.

 In cases such as Bridges, the question of the officer's role is answered by the
trier of fact. See Rucker v. Barker, 192 S.W. 528, 529 (Tex. 1917) (stating that
officer took no steps toward arrest until he consulted with his private employer); Tex.
& N.O.R. Co. v. Parsons, 113 S.W. 914, 916 (Tex. 1908) (stating that officer never
showed intent to arrest trespassers, but intended only to put them off company's
property). Compare Larkin, 44 S.W.3d at 190 (holding that trial court did not err in
granting summary judgment in favor of store when deputy, who was private security
guard for store, followed customer outside and attempted investigative stop for
suspicion of disturbing peace because he was performing duties as public-safety
officer; thus, store could not be vicariously liable for officer's actions as matter of
law); Mansfield, 37 S.W.3d at 150-51 (holding that trial court did not err in granting
summary judgment in favor of apartment complex when police officer, who was
private security guard for apartment complex, discovered visitor exposing himself at
complex because officer was performing duties as police officer at time that he
detained visitor; thus, apartment complex could not be vicariously liable for officer's
actions as matter of law); Half Price Books, Records, Magazines, Inc., 883 S.W.2d
at 377 (holding that police officer, who was private security guard for store, ceased
being independent contractor and became on-duty police officer when he saw crime
being committed). 

 In this case, CNC's evidence proved that Deputy Gordon had assumed the role
of a public-safety officer prior to shooting Deputy Thomas. Deputy Gordon Deputies
Kroger and Thomas recalled that Deputy Gordon wore a "raid jacket" (5) and his badge
and verbally identified himself as "Sheriff's Department" while attempting to detain
the suspect of the suspected stolen vehicle. In criminal cases, these actions reflect
that an officer is acting in his official capacity. See Mansfield, 37 S.W.3d at 149-50
(citing to Hafdahl v. State, 805 S.W.2d 396, 401 (Tex. Crim. App. 1990) ("[W]hen
the police officer stopped at the scene of the accident and approached appellant
shouting 'halt, halt, stop, police,' the officer was no longer off duty.") and Selvage
v. State, 680 S.W.2d 17, 21 (Tex. Crim. App. 1984) ("[The officer] assumed the role
of a peace officer when he removed his coat to identify himself as a Deputy Sheriff
and approached appellant in an attempt to deter him from wrongdoing.")). Deputy
Gordon was attempting to detain the suspect and to protect fellow officers from the
suspect when Deputy Thomas was injured. Appellants produced no evidence raising
a fact issue regarding CNC's vicarious liability for assault. The undisputed evidence
showed that Deputy Gordon was performing his public duty by investigating the
report of the stolen vehicle and attempting to detain the suspect. Accordingly, CNC
cannot be held liable for Deputy Gordon's actions while he was attempting to
apprehend the suspect and suspected stolen vehicle. 

 We hold that the trial court did not err in rendering traditional summary
judgment for CNC on appellants' assault cause of action on the ground that CNC was
not vicariously liable because Deputy Gordon was acting as a public-safety officer
when Deputy Thomas was injured. See Estate of Milo, 909 S.W.2d at 510.

 We overrule appellants' issue one.

 We have already held that the trial court did not err in rendering traditional
summary judgment for CNC on appellants' assault cause of action. Given our
disposition on issue one, we need not reach appellants' issue two, in which appellant
argues that the trial court erred in rendering traditional summary judgment for CNC
on appellants' assault cause of action on the ground that CNC was not vicariously
liable because Deputy Gordon's conduct was negligent, not intentional, and,
therefore, CNC could not be held liable for its independent contractor's negligence. 
See Cincinnati Life Ins. Co., 927 S.W.2d at 625-26 (holding that if summary-judgment order did not specify ground or grounds on which trial court relied for its
ruling, appellate court must affirm summary judgment if any theory that movant
advanced has merit).

B. Premises Liability

 In issues three, five, six, and seven, appellants argue that the trial court erred
by granting CNC's motion for summary judgment on their premises-liability cause
of action. 

 In issue three, appellants argue that the trial court erred by granting CNC's
motion for summary judgment on the ground that Deputy Thomas was barred from
recovering for his injuries on its premises under the "firefighter's rule." In issue five,
appellants argue that the trial court erred by granting CNC's motion for summary
judgment on the ground that CNC's failure to have an additional off-duty Sheriff's
deputy on its premises was not the proximate cause of Deputy Thomas's injuries. In
issue six, appellants argue that the trial court erred by granting CNC's motion for
summary judgment on the ground that CNC's failure to maintain the access gate on
the premises was not the proximate cause of Deputy Thomas's injuries. In issue
seven, appellants argue that the trial court erred by granting CNC's motion for
summary judgment on the ground that Deputy Thomas was a licensee who had actual
knowledge of the criminal activity at the complex, and, therefore, CNC did not breach
its duty to Deputy Thomas. 

 

 CNC alleged in its summary-judgment motion that it was entitled to traditional
summary judgment on appellants' premises-liability cause of action on the ground
that Deputy Thomas was barred from recovering for his injuries under the
"firefighter's rule" because Deputy Thomas's injuries resulted from a risk inherent
to a police officer detaining a suspect of the stolen vehicle. Appellants argued in their
response to CNC's motion for summary judgment that Deputy Thomas was excepted
from the "firefighter's rule" because his injuries were caused by wanton, willful, or
intentional behavior or acts of negligence occurring after Deputy Thomas had reached
the scene. Appellants also argued that CNC owed Deputy Thomas a duty as an
invitee, not a licensee, because Deputy Thomas was conducting business for the Oaks
of Woodforest by assisting Deputy Gordon in his extra-job patrol on CNC's property. 
 1. Law

 A negligence cause of action requires proof that (1) the defendant owed a legal
duty to the plaintiff, (2) the defendant breached that duty, and (3) the breach
proximately caused the plaintiff's injury. D. Houston, Inc. v. Love, 92 S.W.3d 450,
454 (Tex. 2002). The threshold issue in a negligence action is duty. Greater Houston
Transp. v. Phillips, 801 S.W.2d 523, 525 (Tex. 1990). The existence of a legal duty
is a question of law unless the facts giving rise to the duty are disputed. Fort Bend
County Drainage Dist. v. Sbrusch, 818 S.W.2d 392, 395 (Tex. 1991); see Praesel v.
Johnson, 967 S.W.2d 391, 394 (Tex. 1998).

 The decision to impose a legal duty involves complex considerations of public
policy, including social, economic, and political questions and their application to the
particular facts at hand. Praesel, 967 S.W.2d at 397; Graff v. Beard, 858 S.W.2d 918,
920 (Tex. 1993). In deciding whether to impose a duty on a particular defendant,
courts weigh the risk, foreseeability, and likelihood of injury against the social utility
of the actor's conduct, the magnitude of the burden of guarding against the injury, and
the consequences of placing that burden on the actor. Praesel, 967 S.W.2d at 397;
Otis Eng'g Corp. v. Clark, 668 S.W.2d 307, 309 (Tex. 1983). Other proper
considerations include whether one party would generally have superior knowledge
of the risk or a right to control the actor who caused the harm. Praesel, 967 S.W.2d
at 397-98; Graff v. Beard, 858 S.W.2d at 920. Of these, the foremost consideration
is the foreseeability of the risk. El Chico Corp. v. Poole, 732 S.W.2d 306, 311 (Tex.
1987).

 In cases involving public-safety officers, Texas courts typically have applied
the duties owed to an ordinary licensee, including the duty to warn of known,
dangerous conditions. (6) See Campus Mgmt., Inc. v. Kimball, 991 S.W.2d 948, 950-51
(Tex. App.--Fort Worth 1999, pet. denied). Under the common-law "firefighter's
rule," firefighters and police officers are barred from recovering in premises-liability
cases for injuries that result from risks inherent in responding to an emergency if the
injuries are caused by only ordinary negligence. See Peters v. Detsco, Inc., 820
S.W.2d 38, 40 (Tex. App.--Houston [14th Dist.] 1991, writ denied); see also
Houston Belt & Terminal Ry. Co. v. O'Leary, 136 S.W. 601, 605-06 (Tex. Civ. App.
1911, writ ref'd); Juhl v. Airington, 936 S.W.2d 640, 647 (Tex. 1996) (Gonzalez, J.,
concurring). The purpose of the rule is to limit the recovery of firefighters and police
officers so that citizens will not be discouraged from relying on the skill, training, and
expertise of these public servants. Juhl, 936 S.W.2d at 647. Two exceptions to the
firefighter's rule exist: when the licensor commits wanton, willful, or intentional
behavior and when acts of negligence occur after the public-safety officer reaches the
scene. See Airington v. Juhl, 883 S.W.2d 286, 291 (Tex. App.--El Paso 1994) (citing
Rosa v. Dunkin' Donuts of Passaic, 583 A.2d 1129, 1133-34 (1991)), rev'd on other
grounds, 936 S.W.2d 640 (Tex. 1996). 

 

 The duty owed by a licensor to a licensee is not to injure him by willful
conduct, by wanton conduct, or through gross negligence. Wal-Mart Stores, Inc. v.
Miller, 102 S.W.3d 706, 709 (Tex. 2003) (citing State v. Tennison, 509 S.W.2d 560,
562 (Tex. 1974)). An exception to this general rule occurs when the licensor has
knowledge of a dangerous condition, and the licensee does not, a duty is owed on the
part of the licensor either to warn the licensee of the dangerous condition or to make
the condition reasonably safe. Id. at 709. If the licensee has the same knowledge
about the dangerous condition as the licensor, then no duty to the licensee exists. Id. 
Further, a licensor owes no duty to warn a licensee or to make the condition
reasonably safe if the evidence conclusively establishes that the licensee perceived
the alleged dangerous condition. Id.

 2. Analysis

 To be entitled to traditional summary judgment, CNC had to prove that there
was no issue of material fact that Deputy Thomas was acting as a public-safety officer
when he was injured; Deputy Thomas's injuries resulted from risks inherent in
responding to an emergency; CNC did not breach its duty to warn Deputy Thomas of
known, dangerous conditions; and Deputy Thomas's injuries were not caused by
either CNC's wanton, willful, or intentional behavior or CNC's acts of negligence
occurring after Deputy Thomas reached the scene. See Juhl, 936 S.W.2d at 647
(Gonzalez, J., concurring); Houston Belt & Terminal Ry. Co., 136 S.W. at 605-06;
Peters, 820 S.W.2d at 40; see also Airington, 883 S.W.2d at 291 (citing Rosa, 583 at
1133-34). 

 The evidence conclusively shows that Deputy Thomas was acting as a public-safety officer and that his risk of injury was inherent in responding to the emergency,
such as a suspect's fleeing in a stolen vehicle and threatening to cause serious bodily
injury to a police officer with the car. Deputy Thomas was shot by Deputy Gordon
and run over by the suspect while investigating the report of a stolen vehicle and
attempting to detain the suspect. Deputy Thomas was wearing departmental issued
uniform pants, his raid vest that said "Sheriff" across the front and back, and his
Sheriff's badge. While attempting to apprehend the suspect, Deputy Thomas "turned
the flashlight on myself so that [the suspect] could see that I had a badge and 'Sheriff'
across my chest." Deputy Thomas received workers' compensation benefits from the
Harris County Sheriff's Department as a result of the injuries that he sustained.

 Appellants argue in issue seven that CNC owed Deputy Thomas the duties
owed to an invitee, not a licensee. Specifically, appellants argue that it is a "disputed
fact issue" as to whether Deputy Thomas was an invitee or a licensee because Deputy
Gordon requested that Deputies Thomas and Kroger assist him "in making rounds for
the purpose of protecting CNC's property." We disagree. The above-referenced
evidence conclusively shows that Deputy Thomas was acting as a public-safety
officer and that his risk of injury was inherent in responding to the emergency. (7) Cf.
Mansfield, 37 S.W.3d at 150 (holding that if off-duty officer observes a crime, he
becomes, as matter of law, on-duty officer); Half Price Books, Records, Magazines,
Inc., 883 S.W.2d at 377 (explaining that public-safety officer becomes government
agent when he begins to function as one). Accordingly, CNC owed Deputy Thomas
the duties owed to a licensee. See Campus Mgmt., Inc., 991 S.W.2d at 950-51
(recognizing that, in cases involving public-safety officers, Texas courts typically
have applied duties owed to ordinary licensee, including duty to warn of known,
dangerous conditions). 

 The evidence also conclusively shows that CNC did not breach its duty to warn
Deputy Thomas of known, dangerous conditions and that Deputy Thomas's injuries
were not caused by CNC's wanton, willful, or intentional behavior or CNC's acts of
negligence occurring after he reached the scene, but, rather, by the criminal acts of
a third party. Cf. Timberwalk Apts. v. Partners Cain, 972 S.W.2d 749, 756 (Tex.
1998) (holding that, generally, owner has no legal duty to protect another from
criminal acts of third party; however, owner owes duty to those who may be harmed
by criminal acts on owner's premises when risk of criminal conduct is so great that
it is both unreasonable and foreseeable); Centeq Rlty., Inc. v. Siegler, 899 S.W.2d
195, 197 (Tex. 1995). Indeed, to hold CNC liable for Deputy Thomas's injuries
resulting from risks inherent in responding to an emergency goes against the nature
of the service provided by police officers, i.e., police officers are employed to protect
the public and to enforce laws. See Farmer v. B & G Food Enters., Inc., 818 So.2d
1154, 1159 (Miss. 2002) (recognizing that societal expectations supporting
firefighter's rule turn on fact that public hires, trains, and compensates police officers
to deal with dangerous, but inevitable, situations); Kreski v. Modern Wholesale Elec.
Supply Co., 415 N.W.2d 178, 187 (Mich. 1987); see also Pinter v. Am. Family Mut.
Ins. Co., 613 N.W.2d 110, 117 (Wis. 2000) (stating, "Fundamentally, [the
firefighter's rule] is an expression of public policy because it prohibits a [public-safety officer] from 'complaining about the negligence that creates the very need for
his or her employment.'"). Deputy Thomas admitted, "I feel that all police work is
unsafe." The undisputed evidence showed that Deputy Thomas was aware of the
criminal activity at the Oaks of Woodforest apartment complex and had made arrests
personally for aggravated assault with a deadly weapon on that property. 

 Based on the undisputed summary-judgment evidence, we hold that CNC owed
Deputy Thomas the duties owed to a licensee and that CNC was entitled to traditional
summary judgment on appellants' premises-liability cause of action on the ground
that Deputy Thomas was barred from recovering for his injuries on its premises under
the firefighter's rule. See Estate of Milo, 909 S.W.2d at 510.

 Accordingly, we overrule appellants' issues three and seven.

 We have already held that the trial court did not err in rendering traditional
summary judgment for CNC on appellants' premises-liability cause of action. Given
our disposition on issues three and seven, we need not reach appellants' issue five,
arguing that the trial court erred in rendering traditional summary judgment for CNC
on appellants' premises-liability cause of action on the ground that CNC's failure to
have an additional off-duty Sheriff's deputy on its premises was not the proximate
cause of Deputy Thomas's injuries, or issue six, arguing that the trial court erred in
rendering traditional summary judgment for CNC on appellants' premises-liability
cause of action on the ground that CNC's failure to maintain the access gate on the
premises was not the proximate cause of Deputy Thomas's injuries. See Cincinnati
Life Ins. Co., 927 S.W.2d at 625-26 (holding that if summary-judgment order did not
specify ground or grounds on which trial court relied for its ruling, appellate court
must affirm summary judgment if any theory that movant advanced has merit). 

C. Negligent Hiring

 In issue four, appellants argue that, with respect to their negligent-hiring cause
of action, the trial court erred by granting CNC's motion for summary judgment on
the ground that CNC did not breach any duty because it had used ordinary care in
hiring Deputy Gordon to do security work. 

 CNC alleged in its summary-judgment motion that there was no evidence on
the breach-of-duty element of appellants' negligent-hiring cause of action. See Tex.
R. Civ. P. 166a(i). The burden then shifted to appellants to present "more than a
scintilla of probative evidence to raise a genuine issue of material fact." See Forbes
Inc. v. Granada Biosciences, Inc., 124 S.W.3d 167, 172 (Tex. 2003). More than a
scintilla of evidence exists when the evidence is enough to allow "reasonable and
fair-minded people to differ in their conclusions." Id. Therefore, to defeat CNC's no-evidence motion for summary judgment, appellants had to present the court with
some evidence on the breach-of-duty element on the negligent-hiring cause of action. To prosecute their claim of negligent hiring successfully, appellants were
required to show (1) that CNS owed a legal duty to protect Deputy Thomas from
Deputy Gordon's action and (2) that Deputy Thomas sustained damages proximately
caused by CNC's breach of that legal duty. Houser v. Smith, 968 S.W.2d 542, 544
(Tex. App.--Austin 1998, no pet.); see also Peek v. Equip. Serv., Inc., 906 S.W.2d
529, 534 (Tex. App.--San Antonio 1995, no writ) (holding that basis of
responsibility for negligent hiring is master's own negligence in hiring or retaining
an incompetent servant whom the master knows or by exercise of reasonable care
should have known was incompetent or unfit, thereby creating unreasonable risk of
harm to others). The duty of the employer extends only to prevent the independent
contractor from causing physical harm to a third party. Verinakis v. Med. Profiles,
Inc., 987 S.W.2d 90, 97-98 (Tex. App.--Houston [14th Dist.] 1998, pet. denied). 

 The components of proximate cause are cause in fact and foreseeability. Doe
v. Boys Clubs of Greater Dallas, Inc., 907 S.W.2d 472, 477 (Tex. 1995). These
elements cannot be established by mere conjecture, guess, or speculation. McClure
v. Allied Stores of Tex., Inc., 608 S.W.2d 901, 903 (Tex. 1980). The test for cause in
fact is whether the negligent "act or omission was a substantial factor in bringing
about injury," without which the harm would not have occurred. Prudential Ins. Co.
v. Jefferson Assocs., Ltd., 896 S.W.2d 156, 161 (Tex. 1995); see Havner v. E-Z Mart
Stores, Inc., 825 S.W.2d 456, 458-59 (Tex. 1992); Brown v. Edwards Transfer Co.,
764 S.W.2d 220, 223 (Tex. 1988). Cause in fact is not shown if the defendant's
negligence did no more than furnish a condition that made the injury possible. See
Bell v. Campbell, 434 S.W.2d 117, 120 (Tex. 1968). Therefore, to prevent summary
judgment on the asserted basis, Deputy Thomas had to produce more than a scintilla
of evidence that CNC's actions in hiring Deputy Gordon were the cause in fact of his
injuries and that Deputy Gordon's shooting Deputy Thomas and Deputy Thomas's
resulting injuries were a foreseeable consequence of CNC's hiring of Deputy Gordon. 
See Houser v. Smith, 968 S.W.2d 542, 544 (Tex. App.--Austin 1998, no pet.).

 Appellants contend that Deputy Gordon's recklessly firing a gun was
foreseeable because CNC had hired Deputy Gordon to protect its property with
deadly force and CNC did not make an inquiry into Deputy Gordon's qualifications
or training. Appellants argue that Deputy Gordon was not "qualified" as a patrol
deputy for the Sheriff's Department and that he was qualified only to work in the
capacity of a jailer. The summary-judgment evidence showed that the Sheriff's
Department's policy did not prohibit deputies who were not patrol deputies from
providing security at apartment complexes. Indeed, Lieutenant Kenneth Meloncon,
the Sheriff's Department's extra-jobs coordinator, informed Deputy Gordon of the
Oaks of Woodforest assignment, and the Sheriff's Department approved and issued
a permit for Deputy Gordon's extra-job assignment at that apartment complex.

 In addition, the summary-judgment evidence showed that Deputy Gordon had
had the same Sheriff's academy training as a patrol officer. Deputy Gordon was
instructed in academy training when to shoot tactically and when the use of deadly
force was permissible. Appellants produced Deputy Thomas's deposition testimony,
in which he testified that Deputy Gordon had had difficulty qualifying with his
firearm. However, Deputy Thomas admitted that he had no personal knowledge of
Deputy Gordon's firearm test or documentation showing that Deputy Gordon was not
qualified to use a firearm. (8) This is nothing more than a scintilla of evidence that
Deputy Gordon's recklessly firing a gun was foreseeable.

 Even if CNC had inquired about Deputy Gordon's qualifications or training,
appellants did not produce more than a scintilla of evidence of matters that would
have caused CNC reasonably to conclude that Deputy Gordon was not qualified to
provide security at its apartment complex. See Boys Clubs of Greater Dallas, Inc.,
907 S.W.2d at 478 (holding that if organization had investigated volunteer's criminal
record resulting information would not have caused organization reasonably to
anticipate his subsequent sexual assaults because volunteer's prior driving-while-intoxicated convictions did not indicate criminal conduct in any way akin to sexual
assault of young boys).

 Additionally, appellants' assertions that CNC's procedures were inadequate are
nothing more than conclusory allegations unsupported by any evidence. Appellants
presented no summary-judgment evidence to establish industry standards for hiring
qualified security personnel. Appellants have produced no evidence that the
qualifications advocated by appellants, i.e., that CNC should have hired only patrol
deputies as security personnel, are necessary, or that the failure to have such
qualifications constitutes negligence. See Castillo v. Gared, Inc., 1 S.W.3d 781, 786
(Tex. App.--Houston [1st Dist.] 1999, pet. denied). 

 In sum, appellants did not present more than a scintilla of probative evidence
to raise a genuine issue of material fact. We hold that the trial court did not err by
granting summary judgment on CNC's ground that there was no evidence on the
breach-of-duty element of appellants' negligent-hiring cause of action.

 We overrule appellants' issue four. 

 


Conclusion
 

 We affirm the judgment of the trial court. 

 

 

 Tim Taft

 Justice


Panel consists of Justices Taft, Jennings, and Alcala. 
1. Lieutenant Kenneth Melancon, the extra-jobs coordinator for the Harris County
Sheriff's Department, had informed Deputy Gordon of that off-duty
assignment. The Sheriff's Department approved and issued a permit for
Deputy Gordon's extra-job assignment at the Oaks of Woodforest apartment
complex. 
2. Although in his deposition, this deputy's last name is spelled "Kroeger,"
appellants and CNC spell it "Kroger" in their petition, motions, and briefs.
3. In the sections of CNC's motion for summary judgment entitled "Defendant
cannot be held liable for alleged negligent acts of any peace officer in
performance of his duties" and "Defendant cannot be held liable for the
negligent acts of an independent contractor providing security services," CNC
argued grounds for summary judgment on appellants' assault cause of action. 
(Emphasis added.) CNC addressed its grounds for summary judgment on
appellants' assault cause of action only under these "negligence" headings. 
The trial court entered summary judgment on all of appellants' causes of
actions. 


 Appellants did not object or specially except that the heading was confusing
or that CNC's ground for summary judgment was unclear in the trial court. See
McConnell v. Southside Indep. Sch. Dist., 858 S.W.2d 337, 342 (Tex. 1993)
(stating that exception is required should non-movant wish to complain on
appeal that grounds relied on by movant were unclear or ambiguous). For the
reasons stated above, we look to the substance of CNC's argument in those
sections of the motion for summary judgment as grounds for summary
judgment on appellants' assault cause of action.
4. Appellants' live petition lists their cause of action as "negligence." In their
petition, appellants cited to Timberwalk Apartments, Partners, Inc. v. Cain and
alleged that CNC had breached its duty by failing to provide adequate security. 
Id., 972 S.W.2d 749, 754 (Tex. 1998) (holding that complaint that landowner
failed to provide adequate security against criminal conduct is ordinarily
premises-liability claim); see also Lefmark Mgmt. Co. v. Old, 946 S.W.2d 52,
53 (Tex. 1997); Centeq Realty, Inc. v. Siegler, 899 S.W.2d 195, 197 (Tex.
1995); Exxon Corp. v. Tidwell, 867 S.W.2d 19, 21 (Tex. 1993). Accordingly,
we interpret appellants' petition as having pleaded a premises-liability cause
of action. 
5. Deputy Thomas described Deputy Gordon's raid jacket in his deposition as
follows: "I remember [Deputy Gordon's] raid jacket had the sheriff's patches.
He had a patch where his--his badge patch and it had real large yellow letters
that said 'Sheriff' or 'Sheriff's Department' on the front and back."
6. In older cases, some courts also had found an additional duty--not to injure the
public-safety officer through active negligence. Houston Belt & Terminal Ry.
Co. v. Johansen, 179 S.W. 853, 853-54 (Tex. 1915); Houston Belt & Terminal
Ry. Co. v. O'Leary, 136 S.W. 601, 605 (Tex. Civ. App. 1911, writ ref'd); see
Tex. Cities Gas Co. v. Dickens, 168 S.W.2d 208, 211 (Tex. 1943); Campus
Mgmt., Inc. v. Kimball, 991 S.W.2d 948, 950-51 (Tex. App.--Fort Worth
1999, pet. denied). 
7. The summary-judgment evidence shows that the suspect was convicted of
attempted capital murder and was sentenced to 55 years in prison for running
over Deputy Thomas. See Tex. Pen. Code Ann. § 19.03(a)1 (Vernon Supp.
2006) (stating that a person commits capital murder if he commits murder as
defined under section 19.02(b)(1) and the person murders a peace officer or
fireman who is acting in lawful discharge of official duty and whom the person
knows is peace officer or fireman). Therefore, to convict the suspect of the
attempted capital murder of Deputy Thomas, the trier of fact had to find that
Deputy Thomas was a "peace officer" as defined in the Penal Code and the
Code of Criminal Procedure. The Penal Code defines "peace officer" as a
"person elected, employed, or appointed as a peace officer under article 2.12,
Code of Criminal Procedure, Section 51.212 or 51.214, Education Code, or
other law." Tex. Pen. Code Ann. § 1.07(a)(36) (Vernon Supp. 2006). Article
2.12 of the Code of Criminal Procedure includes in its list of "peace officers":
sheriffs, their deputies, and those reserve deputies who hold a permanent peace
officer license under chapter 1701 of the Texas Occupations Code. Tex. Code
Crim. Proc. Ann. art. 2.12(1) (Vernon Supp. 2006). 
8. When asked who had told him that Deputy Gordon had had difficulty
qualifying with this firearm, Deputy Thomas responded, "I can't remember. It
was just somebody--one of the officers came up and said, 'I was standing next
to Gordon out at the range and, you know, he was just missing the whole
target. He couldn't shoot at all, you know.'"